587 A.2d 360

## COUNTY OF SOMERSET

v.

## Mishell J. GEORGE.

Appeal of PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY.

## BOROUGH OF WINDBER

v.

## Mishell J. GEORGE.

Appeal of PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY.

Commonwealth Court of Pennsylvania.

Argued June 15, 1990.

Decided Feb. 20, 1991.

Petition for Allowance of Appeal Denied Sept. 11, 1991.

88

Patricia Carey Zucker, Balaban and Balaban, Harrisburg, for appellant.

Kim R. Gibson, Somerset, for appellee, County of Somerset.

Jeffrey L. Berkey, Fike, Cascio & Boose, Somerset, for appellee, Borough of Windber.

Before McGINLEY and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Pennsylvania National Mutual Casualty Insurance Company (Penn National), surety for Mishell J. George (George), appeals from an order of the Court of Common Pleas of Somerset County (trial court) sustaining the entry of judgments by certificate of Somerset County (County) and the Borough of Windber (Borough) pursuant to the Local Tax Collection Law [1] (Tax Law). We affirm.

George was the tax collector for the Borough, County, and Windber Area School District (school district) from November 6, 1973 until he was removed from office by court order on May 20, 1983. A special audit of George's tax collection practices preliminarily revealed shortages of $82,353.00 for amounts owed to the Borough and $87,645.39 owed to the County for the 1983 tax year. The Borough and County filed certificates of tax collector's liability [2] on July 6, 1983 and July 13, 1983 respectively for the amounts indicated as owing by the preliminary audit. The county prothonotary accordingly entered No. 463 Judgment 1983 (Borough) and No. 469 Judgment 1983 (County) against George pursuant to Section 41(b) of the Tax Law. 72 P.S. § 5511.41(b).

---

1. Act of May 25, 1945, P.L. 1050, *as amended,* 72 P.S. §§ 5511.1–5511.42.

2. The Tax Law provides as follows:
 (a) In all cases where, in any settlement of the accounts of any tax collector, the taxing district or the auditing authority thereof, shall subject a tax collector to any liability, a certificate under the hands and seals of the corporate authorities, shall be filed in the office of the prothonotary of the court of common pleas of the county, stating the amount due and unpaid by such tax collector. Notice thereof shall be given by the taxing district, by registered mail, to such tax collector and his sureties.
 (b) It shall be the duty of the prothonotary to enter such certificate on his docket. Such certificate shall from such entry have the same force and effect as a judgment of the court of common pleas, and execution may be issued thereon as on judgments for the amount remaining unpaid at any time after the entry aforesaid.
 72 P.S. § 5511.41(a), (b).

The special audit was completed on September 22, 1983 and the final report revealed that shortages had also occurred in the years 1979, 1980 and 1981 with the loss in each of $18,643.02, $22,784.85 and $17,944.39 for amounts owed to the Borough respectively, and $7,673.56, $23,765.53 and $25,261.89 for County real estate and per capita taxes, respectively. The total amount due to the Borough and County for the years 1979–1981, inclusive, was $59,372.25 and $56,700.98, respectively.

Erie Insurance Company (Erie) provided the public official surety bonds for George for the years 1982 and 1983. Erie has paid on its bonds for those years and is not involved in this case. The school district was paid in full and is likewise not involved in this case.

Penn National provided the public official surety bonds covering George from January 1, 1974 to January 4, 1982 inclusive. The amounts of the bonds were $30,000 for 1974–1977, $60,000 for 1978–1980 and $90,000 for the final year 1981. On August 15, 1984, Penn National filed petitions to appeal from the entry of judgments by certificate of the Borough and County.[3] The petitions requested that the trial court strike and/or open the judgments and also set forth counterclaims against both the Borough and County alleging that the respective government entities were

3. The Tax Law provides as follows:
 (c) Within thirty days of the date of such notice, any tax collector or his sureties, may appeal to the court of common pleas of the proper county from such judgment. No such appeal shall be allowed by the court, unless the appellant shall enter into good and sufficient bond with two sureties or a surety company in such amount as the court shall fix, conditioned to prosecute such appeal, and to pay such sum of money as shall appear to be due on the final determination of the proceedings on said appeal. The court shall thereupon issue a rule on the taxing district to show cause why such judgment should not be opened or stricken from the record for reasons set forth in the petition. An answer to any such petition and rule shall be filed by the taxing district within thirty days from the date of the service of the rule. Service of the rule shall be made in such manner as the court may direct. The issues joined on the petition, and answer thereto, shall be tried by the court and jury, unless a jury trial shall be waived by both parties.
 72 P.S. § 5511.41(c).

negligent in their failure to require George to fulfill all of the requirements for the settlement of tax duplicates in accordance with the mandates of the Tax Law. *See* 72 P.S. §§ 5511.25, 5511.26, and 5511.31.

On October 3, 1984, the Borough and County filed answers to Penn National's petitions together with motions to strike the counterclaims. On the same date, the Borough and County filed amended and supplemental certificates of tax collector liability against George for the years 1979–1981, inclusive, for the amounts indicated as owing as reflected in the special audit. The amended certificates were filed to the same docket number as the original judgments.

Penn National filed motions to strike the amended and supplemental certificates; answers and replies thereto were filed. After oral argument, the trial court issued an order dated November 2, 1989, whereby the court granted the Borough's and County's motions to strike off the counterclaims, denied Penn National's motions to strike off the amended and supplemental certificates, dismissed Penn National's appeal from the entry of judgments by certificates, and denied Penn National's motion for a jury trial.[4] This appeal by Penn National followed.[5]

Penn National, on appeal, presents the following issues: (1) whether the judgments were subject to amendment via the amended and supplemental certificates; (2) whether Penn National set forth sufficient evidence of meritorious defenses to require the trial court to grant the petitions to appeal entry of judgment in the nature of a petition to open judgment; (3) whether the counterclaims of Penn National were properly dismissed for failing to set forth valid causes

4. The trial court's original opinion was dated November 2, 1989. An amended opinion was filed on December 4, 1989 without in any manner altering the November 2, 1989 order.

5. Penn National originally filed an appeal with the Superior Court on November 27, 1989. Penn National filed an amended notice of appeal on November 30, 1989 and the appeal was transferred to the Commonwealth Court pursuant to 42 Pa.C.S. § 762(a)(4)(i)(A).

of actions; (4) whether Penn National was entitled to a jury trial.

## Motion to Strike Amended Certificates

■ Penn National moved to strike the amended and supplemental certificates asserting that it was discharged from liability on its bonds for the years 1979–1981, inclusive, pursuant to Sections 4(d), 26 and 31 of the Tax Law. 72 P.S. §§ 5511.4(d), 5511.26, 5511.31.

Penn National maintains that Section 26 of the Tax Law provides that a tax collector is obligated to make a complete settlement of all taxes for each year with the proper taxing district. The final accounts and other periodic returns and payments of a tax collector are subject to audit by the taxing district. The tax collector is accorded a credit for all taxes collected and paid over. 72 P.S. § 5511.26.

Penn National maintains that Section 31 of the Tax Law provides that unless settlement of a tax duplicate is made by a tax collector, he shall not be entitled to a duplicate for any succeeding year during his term. 72 P.S. § 5511.31. Penn National further maintains that Section 4(d) of the Tax Law provides that a tax collector and his sureties shall be discharged from liability on his bond for taxes charged in a duplicate as soon as such items are collected and paid over to the proper taxing district. 72 P.S. § 5511.4(d).

Penn National asserts that, by virtue of the aforementioned provisions of the Tax Law, they are discharged from liability on the bonds since George made yearly settlements of all taxes charged in the duplicates, audits were performed which indicated no liability for unpaid taxes, and new duplicates for succeeding years had been issued as proof of proper settlement of previous duplicates. Penn National argues that by allowing the amended certificates, in view of the provisions of the Tax Law, they are being exposed to liability which had been previously discharged.

Section 4(d) of the Tax Law provides:

[T]hat the tax collector and his sureties *shall not* be discharged of their liability under the provisions of this subsection if the tax collector has in fact collected such taxes *but has failed to pay the same over to the proper taxing district.* (Emphasis added.)

72 P.S. § 5511.4(d)

While it is true that George made yearly settlements of his tax duplicates and his accounts were subject to audit, the apparent acquiescence of the government entities, in issuing successive duplicates, was fraudulently induced by George's deceptive conduct.

Penn National, as surety for George, was not discharged from liability on its bonds pursuant to Section 4(d) of the Tax Law, because while George had in fact collected taxes, he failed to pay the same over to the proper taxing district. Denis P. Kotzan [6] (Kotzan) testified that George engaged in an elaborate scheme known as lapping as a means of defrauding the Borough and County.

Kotzan testified that lapping refers to a practice of paying one entity's tax dollars to another entity. Kotzan testified that the special audit revealed that George was receiving Borough and County taxes in the beginning of the year, paying those funds to the school district on their tax duplicate and was receiving school district money and paying those funds to the Borough and County for settlement of their respective duplicates.

The school district operated under a different tax year than the Borough and County.[7] School district taxes collected in late August, September and October were used for

6. Kotzan was a certified public accountant employed by the firm of Martin, Waltman and Kotzan. The firm was retained by the Borough, County and school district to perform the special audit of George's accounts. Kotzan also served as the Borough auditor.

7. The levy date for school district taxes was September 1, with September–October as discount periods, November–December as face periods, January–March or April as penalty periods with a close out date at the end of either month. The levy date for the Borough and County taxes was January 1, with January–February as discount periods, March–May as face periods, June–November as penalty periods with a close out date at the end of November.

payment of taxes reported as collected for the Borough and County. The other side of the lap consisted of Borough and County taxes collected in late January, February, March and April being used for payment of taxes reported as collected for the school district.

Kotzan testified that George's bank deposits were compared to the actual collections. The comparison indicated that deposits for the entity which was receiving the money at that point in time had insufficient collections to support the amounts reported as received. In other words, George would not have enough money to pay over taxes for a specific month based on the stamped tax receipts he had at that time for the respective governmental entities.

The testimony of Kotzan established that George would use funds collected for the Borough and County to settle the school district's duplicate and vice versa. Accordingly, George failed to pay over the taxes collected to the proper taxing district. Penn National did not provide any testimony to contradict George's lapping scheme as outlined by Kotzan.

Penn National next argues that they are not liable by reason of the fact that the loss was not discovered until 1983, a year in which they were not the surety for George, and the filing of the 1979–1981 tax deficiencies as amendments to the 1983 judgments was improper and of no effect. There is no merit in Penn National's argument.

Neither Section 41, which governs the filing of certificates of tax collector's liability, nor any other provision of the Tax Law makes mention of whether a certificate may be amended. 72 P.S. § 5511.41. However, the Judicial Code provides that any action upon any official bond of a public official must be commenced within four years. 42 Pa.C.S. § 5525(6). Formerly, the statute of limitations on such actions was six years. 42 Pa.C.S. § 5527(3). The current four year period was amended on December 20, 1982, to include actions on bonds, but did not take effect until 60

days thereafter.[8] Accordingly, the six year statute of limitations is applicable herein.

The record establishes that George was removed from office by court order in May of 1983. The special audit was conducted prior to the expiration of the 1983 tax year. The Borough and County filed the amended and supplemental certificates on October 3, 1984. The amendment of No. 463 Judgment 1983 and No. 469 Judgment 1983 to include the tax deficiencies for the years 1979–1981 was within the six year statute of limitations period.

The 1979–1981 tax deficiencies which were filed along with the 1983 judgments could have been filed as separate judgments since the statute of limitations had not yet expired. The Tax Law does not prohibit the filing of amendments and the amended certificates were timely filed and properly entered. Penn National has not demonstrated any prejudice by having the 1979–1981 judgments filed by way of amendment rather than separately.

We have not been made aware of any authority to preclude the amendment of the certificates. Accordingly, the motion to strike the amended and supplemental certificates was properly denied.

*Petitions to Appeal, Strike and/or Open Judgments*

■ The trial court treated Penn National's petitions to appeal the entry of judgments as petitions to strike and/or open judgment. A trial court's denial of a petition to open judgment will not be disturbed absent an error of law or a clear, manifest abuse of discretion. *Rounsley v. D.C. Ventre & Sons, Inc.*, 361 Pa. Superior Ct. 253, 522 A.2d 569, *appeal denied,* 516 Pa. 614, 531 A.2d 781 (1987).

■ The procedure for opening or striking a judgment is found at Pa.R.C.P. 2959. Additionally, case law mandates that in order to open a judgment, the petitioner has

8. Section 403 of the Act of December 20, 1982, P.L. 1409, No. 326, provides that the amendment to this section "shall apply only to causes of action which accrue after the effective date of this act."

the burden of demonstrating a meritorious defense of the claim presented and the record must contain sufficient evidence of the defense. *Versak v. Washington,* 359 Pa. Superior Ct. 454, 519 A.2d 438 (1986). While a meritorious defense need not be proved at the initial stages of the proceedings, it must be set forth in precise, specific and clear terms. *Burkett v. Allstate Insurance Company,* 368 Pa. Superior Ct. 600, 534 A.2d 819 (1987).

 Penn National asserts that it set forth in clear, precise terms that Borough officials had knowledge of irregularities in George's tax collecting procedures but took no action to investigate or reverse such practices. Penn National maintains that evidence of such knowledge and lack of action by the Borough demonstrated an attempt by the Borough to defraud them. Penn National asserts that the trial court erred and manifestly abused its discretion by requiring them to prove the Borough had knowledge of George's defalcations instead of submitting the matter to a jury.

The trial court concluded that Penn National failed to set forth in the petition any knowledge on the part of the Borough which would indicate that it was cognizant of George's failure to pay over the taxes. The only evidence in support of Penn National's argument is from excerpts of Kotzan's testimony in which he testifies that he informed some council members of his difficulty in obtaining reports from George for auditing purposes. The trial court correctly concluded that such averment, without more, was insufficient to demonstrate that the Borough was aware of the defaults by George.

 Penn National also contends that the taxes sought by the Borough and the County in the amended certificates had already been paid. Penn National again relied on the deposition testimony of Mr. Kotzan as follows:

Q Well, at the time the tax duplicate was due, were the taxes paid?

A Did Mr. George settle—

Q Did Mr. George settle?

A —his duplicate, yes.

 * * * * * *

Q So that, as of the end of the year for '79, '80, '81 and '82—?

A Basically, he paid his duplicate up.

 * * * * * *

Q However, all of those amounts in terms of holdbacks have been received by both the Borough and by the County with the exclusion of $12,000; isn't that correct? ... [Objection] Have been received by the Borough and the County for those years.

A Excluding the $12,313.98, those holdbacks were received.

Penn National maintains that this testimony indicates that the Borough and County received all of the monies which were due except $12,313.98 owed to the Borough as a result of a page lost from the monthly tax collector's report. As a result of the collection and payment of the taxes due over to the Borough and County on the tax duplicates, Penn National asserts that its liability on the bonds has been discharged.

The trial court concluded that Mr. Kotzan's deposition excerpts, standing alone, were not conclusive. The excerpts relied upon by Penn National do not provide an accurate indication of whether the Borough and County actually received the collected taxes for the respective years in question. The trial court chose to accept other portions of Mr. Kotzan's deposition which established that although the duplicates were paid up, they were paid with a different entity's funds. *See Mercer County v. Cantelupe,* 341 Pa. 454, 19 A.2d 474 (1941) (misappropriation by tax collector of funds during a number of successive years in which he adopted the practice of attempting to cover the shortage in one year by applying thereto collections of the following year).

The trial court concluded that it was not until the special audit was performed that George's lapping scheme was discovered and that while the tax duplicates evidenced full payment, such was not the case. Penn National does not assert that the amount due and owing as reflected in the special audit was inaccurate. Penn National neither conducted an independent audit nor questioned Mr. Kotzan's methods of accounting. The trial court correctly concluded that Penn National's evidence of payment was an insufficient basis on which to open judgment.

### Motions To Strike Counterclaims

■ The Tax Law is also silent with regard to the pleading of counterclaims. The trial court thus did not abuse its discretion or commit an error of law by referring to the general rules of procedure governing counterclaims. The pleading of counterclaims is generally controlled by Pa. R.C.P. 1031 which does not specifically disallow a counterclaim to be brought in the type of action at issue here.

Penn National asserts that *Lambakis v. Exar*, 340 Pa. Superior Ct. 483, 490 A.2d 882 (1985) supports the proposition that a counterclaim joined in a petition to open judgment is not procedurally defective. The trial court held that *Lambakis* was not applicable to this case and distinguishable on the basis that the judgment in that case had already been opened and that Penn National's petitions to open had been denied. The trial court's determination that there was not sufficient evidence of a meritorious defense to allow the opening of the judgments, thus rendered consideration of the counterclaims unnecessary. *See J.M. Korn & Son, Inc. v. Fleet–Air Corp.*, 300 Pa. Superior Ct. 458, 446 A.2d 945 (1982) (only upon the opening of a judgment may the validity of an unliquidated counterclaim be determined).

The trial court further concluded that the counterclaims must be stricken because they failed to set forth valid causes of action. The trial court characterized the counterclaims as defenses to the judgments. The only defenses available to Penn National were those which the tax collec-

tor himself could raise. Penn National's defense that it was not liable because the Borough was negligent in its monitoring and review of the tax collector, is not a defense which the tax collector himself could raise. The counterclaims were properly stricken as they failed to assert a valid cause of action.

### Necessity and Waiver of Jury Trial

■ Penn National asserts that Section 5511.41(c) of the Tax Law provides that they were entitled to a trial by jury. 72 P.S. § 5511.41(c). "The issues joined on the petition, and answer thereto, shall be tried by the court and jury, *unless* a jury trial shall be waived by both parties." (emphasis added) 72 P.S. § 5511.41(c). Since the Tax Law does not expound as to what constitutes a waiver, the trial court did not abuse its discretion by referring to the general statute governing the right to a trial by jury.

Section 5104(a) of the Judicial Code provides that "[t]rial by jury may be waived in the manner prescribed by general rules." 42 Pa.C.S. § 5104(a). Pa.R.C.P. 1007.1(a) governs the waiver of the right to a trial by jury and provides:

In any action in which the right to jury trial exists, that right shall be deemed waived unless a party files and serves a written demand for a jury trial not later than twenty (20) days after service of the last permissible pleading. The demand shall be made by endorsement on a pleading or by a separate writing.

The only pleadings authorized by Section 41 of the Tax Law are the petition and answer. 72 P.S. § 5511.41(c). Thus, consistent with the rules, any of the parties had twenty (20) days after service of the answers to make a written demand for a jury trial. The record is devoid of any such demands and thus the right to a trial by jury was properly deemed waived.

Accordingly, having concluded that the trial court did not abuse its discretion nor commit errors of law, the order of the trial court will be affirmed.

## ORDER

AND NOW, this 20th day of February, 1991, the order of the Court of Common Pleas of Somerset County, dated November 2, 1989, is affirmed.