## CENTRAL BUCKS SCHOOL DISTRICT

v.

### Mary H. COGAN, Tax Collector and Lumbermens Mutual Casualty Company, Appellants.

Commonwealth Court of Pennsylvania.

Argued May 4, 1998.

Decided Sept. 1, 1998.

Reargument and/or Reconsideration Denied Nov. 5, 1998.

Frederick P. Santarelli, Blue Bell, for appellant, Mary H. Cogan.

William F. Thomson, Jr., Fairless Hills, for appellant, Lumbermens Mutual.

James C. Dalton, Doylestown, for appellee, Central Bucks School District.

Before McGINLEY and SMITH, JJ., and McCLOSKEY, Senior Judge.

SMITH, Judge.

Mary H. Cogan and her surety Lumbermens Mutual Casualty Company (Lumbermens) (collectively, Appellants) appeal by permission from the order of the Bucks County Court of Common Pleas that granted a motion in limine filed by Central Bucks School District (School District) and excluded evidence relating to the amount of tax revenues that Cogan misappropriated while she served as the School District's tax collector. The trial court's order also denied a motion in limine filed by Lumbermens seeking to preclude the School District from recovering any sums as damages against Lumbermens. Appellants contend that the trial court erred by concluding that the amount of Cogan's default was calculated by the amount of the shortage that Cogan declared on her date of resignation and by precluding Appellants

from presenting evidence on their recoupment defense.[1]

Cogan served as the tax collector for the School District, Bucks County and Warwick Township from 1960 until January 15, 1991, when she resigned her position. Lumbermens was her surety for that period, and the School District paid the premiums due under the bond agreement. During her tenure as tax collector, Cogan misappropriated real estate tax proceeds for her own use and covered her thefts by engaging in an elaborate lapping scheme. Cogan would receive County and Township taxes in the beginning of the year and would pay those funds to the School District on their tax duplicate. During the second half of the year, Cogan would receive School District tax revenues and pay those funds to the County and Township to cover the revenues that she had paid to the School District earlier in the year. The scheme continued unnoticed for nearly 20 years.

In 1990, the lien date for unpaid taxes was advanced from May 15 to January 15 of the same year, which necessitated an earlier accounting of taxes collected and made it impossible for Cogan to continue her scheme undiscovered. In January 1991, Cogan announced that there would be a shortage in tax revenues for the School District and resigned, and in October 1992, she pleaded guilty to various offenses arising out of her lapping scheme.

In January 1992, the School District filed a certificate of liability against Cogan and Lumbermens claiming the total amount of real estate tax revenues collected from taxpayers for fiscal year 1990–1991 and interim taxes for 1989–1990 that Cogan failed to pay over to the School District. The parties stipulated that the total amount paid by taxpayers to Cogan but not paid by Cogan to the School District appears on the 1991 tax records and totals $368,475 and that the actual sum misappropriated totals $86,000. The tri-

al court found, however, that the lapping scheme created increasingly larger shortages because the money was taken from payments made during discount or flat tax periods, and the repayments were made during penalty periods. The sole issue before the trial court in deciding the motions in limine was the amount of money that Lumbermens had to repay to the School District—$86,000 or $368,475.

The trial court determined that the issue is governed by Section 4(d) of the Local Tax Collection Law (Law), Act of May 25, 1945, P.L. 1050, *as amended,* 72 P.S. § 5511.4(d), which provides that:

> The tax collector ... and his sureties shall be discharged from further liability on his bond for the taxes charged in a duplicate delivered to him as soon as all tax items contained in the said duplicate are ... collected and paid over to the proper taxing district.... [T]he tax collector and his sureties shall not be discharged of their liability ... if the tax collector has in fact collected such taxes but has failed to pay the same over to the proper taxing district.

The bond issued by Lumbermens states that if Cogan "shall account for and pay over all taxes, penalties and interest received and collected by him [sic] to the taxing districts entitled thereto," Lumbermens is released of its obligation under the bond to pay the taxing districts as Cogan's surety.

Both parties relied on *County of Somerset v. George,* 138 Pa.Cmwlth. 87, 587 A.2d 360 (1991), *appeal denied,* 528 Pa. 632, 598 A.2d 285 (1991), in arguing their motions before the trial court. In *George* the Court considered another tax collector's lapping scheme, which he engaged in between 1979–1981 and during 1983. The tax collector's surety for 1979–1981 was Penn National, but another company acted in that role after 1981. The scheme was not discovered until 1983, when a county audit determined that there were

---

1. Lumbermens also argues that the School District's lawsuit is barred by the applicable statute of limitations. This issue was resolved in the School District's favor by the trial court in deciding motions for summary judgment, but the instant appeal does not involve the order that decided those motions. This Court's order

granting Appellants permission to appeal from the interlocutory order deciding the motions in limine did not give permission to raise issues decided by other trial court orders. Accordingly, the statute of limitations issue is not properly before the Court and will not be considered in this appeal.

shortages for 1983 and for 1979–1981. Penn National argued that it should not be held liable for the shortages because the shortages were not discovered until a year in which it was not the tax collector's surety. The trial court rejected this argument, holding that under Section 4(d) the surety was not released from its liability because the tax collector had defaulted during the period that Penn National was the surety and had collected the tax revenues but not paid them over to the proper taxing authority.

Appellants argued that *George* requires the School District to ascertain the amount that Cogan misappropriated to prove its loss. The School District countered that, under *George*, the surety's bond liability depends not on the amount of the actual thefts but rather equals the amount that the tax collector failed to pay over to the proper taxing authority. The trial court apparently concluded that the School District's reading of *George* was correct, for the court stated that the language both of the bond and of the Law made clear that Lumbermens' liability is measured by the amounts collected by Cogan between July 1, 1990 and January 15, 1991 but not paid over to the School District, i.e. $368,475. The court therefore granted the School District's motion and denied Lumbermens' motion. The court later amended its order by certifying under Section 702(b) of the Judicial Code, *as amended*, 42 Pa.C.S. § 702(b), that the matter involved a controlling question of law as to which there is a substantial ground for difference of opinion, permitting this interlocutory appeal.[2]

█ The Court first turns to the issue of how to calculate the amount of default under the bond. The arguments on appeal are identical to those raised before the trial court, and this Court agrees with the trial court that the proper measure of gross damages is calculated by the amount of the default declared by Cogan at the time of her resignation: $368,475. The Court reaches this conclusion by following the plain language of the bond and of the Law, which both state that Lumbermens, as Cogan's

surety, is liable for amounts that Cogan collected from taxpayers but failed to pay over to the proper taxing authority. The bond and the Law define the amount of default in this case.

The Court therefore rejects Appellants' argument that the amount of Cogan's default is limited to the amounts that Cogan actually misappropriated through her lapping scheme. The decision in *George* does not support Appellants' argument on this point because the decision refers only to the amount that the tax collector in that case failed to pay over to the proper taxing authority and never refers to the actual amounts stolen. Additionally, the question before the *George* Court was not the amount of liability but instead was which bond company was liable for the defaults. There were several defaults in *George*, spanning several years and more than one bond agreement. In the case sub judice, however, there is only one bond agreement and only one instance of default, and the identity of the liable party is not at issue. Accordingly, the Court shall affirm the portion of the trial court's decision that determined the amount of default in this case to be $368,475.

█ The Court further concludes, however, that Lumbermens may well be entitled to recoupment for monies collected during Cogan's tenure but paid over to the School District following Cogan's resignation. Although neither the statute nor the bond explicitly permit a bond company to recover losses of this sort, the equitable doctrine of recoupment may be invoked to effect the return of funds that were ultimately paid over from the tax collector's office to the School District but that were included, for accounting purposes, in the amount of default. *Kaiser v. Monitrend Investment Management, Inc.*, 672 A.2d 359 (Pa.Cmwlth. 1996) (recoupment defense is available in any case where the plaintiff has a viable claim for damages). At oral argument in this case, counsel for all parties noted that the factual record was not sufficient to determine this amount, if any. Accordingly, the portion of

2. When examining questions of law, the Court's review is plenary. *American Cas. Co. v. PHICO*

*Ins. Co.,* 549 Pa. 682, 702 A.2d 1050 (1997).

the trial court's order effectively rejecting Appellants' recoupment claim is reversed, and the case shall be remanded to the trial court for further factual development on this issue. *Weber v. Wyoming Valley West School Dist.,* 668 A.2d 1218 (Pa.Cmwlth.1995) (remand necessary when further facts need development). The trial court's order is otherwise affirmed.

### ORDER

AND NOW, this 1st day of September, 1998, the order of the Court of Common Pleas of Bucks County is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.