COMMONWEALTH of Pennsylvania

v.

FUNDS IN MERRILL LYNCH ACCOUNT, OWNED BY Rennick PEART Nos. 870–56483 and 870–67056; Funds in Corestates Bank Account, Owned by Rennick Peart, No. 20698485; Funds in Fidelity Bank Corp., Owned by Rennick Peart and S and S Records, Inc., No. 3078227; Funds in Germantown Bank, Owned by Rennick Peart, No. 30–907735; $1338.00 U.S. Currency Seized from Rennick Peart and Listed in Pr # 510589; $10,283.00 U.S. Currency Seized from Rennick Peart and Listed on Pr # 510591; Miscellaneous Jewelry Seized from Rennick Peart and Listed on Pr # 510593 Real Property and Improvements Known as 5703 Chester Avenue, Ex Rel, Rennick Peart,

Rennick PEART, Appellant.

Commonwealth of Pennsylvania

v.

Rennick Peart, Appellant.

Commonwealth of Pennsylvania

v.

Funds In Merrill Lynch Account, Owned By Rennick Peart Nos. 870–56483 and 870–67056; Funds in Corestates Bank Account, Owned by Rennick Peart, No. 20698485; Funds in Fidelity Bank Corp., Owned by Rennick Peart and S and S Records, Inc., No. 3078227; Funds in Germantown Bank, Owned by Rennick Peart, No. 30–907735; $1338.00 U.S. Currency Seized from Rennick Peart and Listed in Pr # 510589; $10,283.00 U.S. Currency Seized from Rennick Peart and Listed on Pr # 510591; Miscellaneous Jewelry Seized from Rennick Peart and Listed on Pr # 510593 Real Property and Improvements Known as 5703 Chester Avenue, Ex Rel, Rennick Peart.

Rennick Peart, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 7, 2000.
Decided May 4, 2001.

Gilbert B. Abramson and Michael B. Tolcott, Philadelphia, for appellant.

Jonathan M. Levy, Asst. Dist. Atty., Philadelphia, for appellee.

Before DOYLE, President Judge, SMITH, J., and McCLOSKEY, Senior Judge.

SMITH, Judge.

Rennick Peart (Appellant) appeals from three orders of the Court of Common Pleas of Philadelphia County relating to the forfeiture of various property, currency and funds that the court found to have been used in a criminal enterprise involving the sale and distribution of drug paraphernalia. Appellant contends that the court erred in admitting certain evidence due to defects in the issuance and the execution of a search warrant pursuant to which the evidence was seized; that the court erred in authorizing forfeiture on a "proceeds" theory; and that the Commonwealth failed to sustain its burden of proving a significant nexus between the assets seized and a violation of The Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substance Act).[1]

I

Appellant is the owner of property at 5703 Chester Avenue, Philadelphia where he operated a store named "S&S Records." Based upon information received, the Philadelphia police set up a surveillance of the store in February 1995. On February 3 an undercover officer entered

---

1. Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101—780–144.

the store and purchased two bags of plastic packets and a hand-held scale using a pre-recorded $20 bill. On February 7 the undercover officer returned to the store and purchased two bags of plastic packets, again using a pre-recorded $20 bill. While in the store, the officer did not observe a significant amount of records, compact discs or tape cassettes on display. He did observe a large quantity of items for sale that are used in the manufacturing and packaging of illegal narcotics. During a two-hour period that evening, the police observed approximately 30 to 55 people entering and leaving S&S Records; none of the people exiting carried visible bags or parcels consistent in size with records, compact discs or tape cassettes.

On February 7, 1995, the police observed Appellant in the garage at his residence at 705 Yale Road, Bala Cynwyd. Appellant placed a brown box into the trunk of his black Mercedes–Benz and then drove to the store where he removed the box and carried it inside. Soon thereafter the police observed three people enter and leave the store over a short period of time with no visible purchases. On February 8 the police obtained and executed a search warrant for the store. They seized a total of 589,400 plastic packets, baggies and vials commonly used to package narcotics for street level sales; an extensive variety of cutting agents, scales, single edge razor blades, smoking pipes, safe cans and miniature drug processing systems; invoices enumerating the sale and delivery of items commonly used to facilitate drug trafficking; two personal money orders totaling $2,000; $185 cash from Appellant's wallet; $53 cash from the register, assorted certificates and jewelry; and Appellant's black Mercedes–Benz containing $1,100 in cash. No controlled substances were found. That same day the police obtained and executed a search warrant from a magistrate in Montgomery County for Appellant's residence. The police found three cartons in Appellant's garage containing bundled plastic packets similar to the ones found at the store. The police found $6,003 in cash in a non-operating refrigerator in the garage, which included one of the pre-recorded $20 bills used by the undercover officer. The police found $4,300 cash and bank documents in a briefcase inside the residence.

Based upon the bank documents, the Police obtained a search warrant from the trial court for Merrill Lynch Account No. 870–56485 in the name of Rennick Peart and Merrill Lynch Account No. 870–67056 in the name of Rennick Peart in care for Jerry Peart. The affidavit accompanying the warrant specified the address of the property to be searched as Merrill Lynch's Legal Compliance Office in New York. The warrant was served, however, at a Merrill Lynch Office in Philadelphia. A clerk in Merrill Lynch's Philadelphia office forwarded the warrant to the Legal Compliance Office, which froze the specified accounts. After serving the warrant, a police officer wrote into the space provided on the warrant for an inventory of the property seized, "Accounts frozen at this time/Records to be delivered at a later date."

Appellant was not convicted of any criminal charges arising from these incidents. All controlled substance charges against Appellant were dismissed in March 1995, and Appellant was acquitted of the remaining drug paraphernalia charges in September 1996. On May 3, 1995, the Commonwealth filed petitions for forfeiture pursuant to Sections 6801–6802 of the Judicial Code (Drug Forfeiture Act), 42 Pa.C.S. §§ 6801–6802, against 5703 Chester Avenue, funds in Merrill Lynch Accounts Nos. 870–56483 and 870–67056 (Merrill Lynch Accounts), funds in Corestates Bank Account No. 20698485 (Cores-

tates Account), funds in Fidelity Bank Account No. 3078227 (Fidelity Account), funds in Germantown Savings Bank No. 30–907735 (Germantown Account), all currency seized from Appellant, the Mercedes–Benz and assorted jewelry.

■ Appellant filed a motion to quash the search warrant for the Merrill Lynch accounts, which the trial court denied on May 3, 1995. Appellant's appeal of the May 3 order is docketed in this Court at No. 2498 C.D.1998. Appellant filed a motion in limine to suppress evidence found at his residence, evidence from the search of the Mercedes–Benz and evidence seized on the basis of the warrant for the Merrill Lynch Accounts. The trial court denied the motion in limine on March 31, 1998. Appellant's appeal of that order is docketed at No. 2497 C.D.1998. The trial court held forfeiture hearings from June 22 through June 29, 1998 and on July 17, 1998 granted forfeiture of Appellant's residence, all currency and money orders and all funds in the Merrill Lynch, Fidelity and Corestates Accounts. The trial court denied forfeiture of the Mercedes–Benz and the Germantown Account. The Commonwealth returned the jewelry. Appellant's appeal of the July 1998 order is docketed at No. 2499 C.D.1998.[2]

## II

■ Appellant first contends that the search warrant for his residence was deficient because the supporting affidavit lacked any evidentiary basis for concluding that contraband or evidence of a crime would probably be found in his residence or in his car. A search warrant must be supported by probable cause, which is a reasonable belief based upon a totality of the circumstances that illegal conduct is occurring or that evidence of a crime is presently located in the place to be searched. *Commonwealth v. Petroll*, 558 Pa. 565, 738 A.2d 993 (1999) (discussing requirements of Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution). The affidavit supporting the search warrant must set forth a substantial nexus between the crime and the place to be searched. *Commonwealth v. Fisher*, 545 Pa. 233, 681 A.2d 130 (1996).

Given the ample evidentiary basis in the affidavit for concluding that Appellant was conducting an illegal drug paraphernalia business at his store, the police's observation of Appellant transporting a box from his residence to the store is more than sufficient to support the inference that Appellant was storing inventory for his illegal business at his residence. Thus the affidavit set forth a sufficient evidentiary basis for the police to reasonably believe that evidence of Appellant's illegal drug paraphernalia business would be found at his residence. Appellant also objects to the search of his Mercedes–Benz. That search, however, was a routine inventory of the vehicle's contents after it had been seized and impounded by the police. *See Commonwealth v. Nace*, 524 Pa. 323, 571 A.2d 1389 (1990) (explaining that police are permitted to conduct routine inventory searches of property taken into police custody for the purpose of safeguarding the seized items). Accordingly, the trial court properly denied Appellant's motion.

■ Appellant next contends that the search warrant for the Merrill Lynch Accounts was defective because it was issued

---

**2.** The Court's review of a forfeiture proceeding is limited to examining whether the findings of fact made by the trial court are supported by competent evidence and whether the trial court abused its discretion or committed an error of law. *Strand v. Chester Police Department*, 687 A.2d 872 (Pa.Cmwlth. 1997).

by a Judge of the Philadelphia Municipal Court for an address in New York.[3] Appellant relies upon Pa.R.Crim.P.2001, which provides: "A search warrant may be issued by any issuing authority within the judicial district wherein is located either the person or place to be searched." The search warrant showed the address for Merrill Lynch's Legal Compliance Office in New York because Merrill Lynch employees had informed the police that the Legal Compliance Office was the one which would freeze the accounts. However, the search warrant was executed at a Philadelphia branch office of Merrill Lynch, and the affidavit was premised upon activities that occurred in Philadelphia. As the search warrant was executed in Philadelphia, it was within the jurisdiction of the Philadelphia Municipal Court.

■ Appellant also argues that the search warrant for the Merrill Lynch Accounts was unconstitutionally executed. Appellant maintains that the officer executing the warrant varied from its terms by writing "Accounts frozen at this time/Records to be delivered at a later date" on the warrant. This argument is wholly frivolous. The officer wrote the statement to which Appellant objects on the portion of the search warrant that is designated for officers executing search warrants to make an inventory of the items seized in the presence of the person from whose possession or premises the items were seized. Such inventories are required by Pa.R.Crim.P.2009, and the executing officer's compliance with that rule was entirely proper.

■ Appellant further argues that Pa. R.Crim.P.2002 authorizes only the search and production of tangible property. Appellant maintains that the Commonwealth may seize bank accounts for forfeiture only by following the procedures set forth in Section 6802 of the Drug Forfeiture Act, 42 Pa.C.S. § 6802. Appellant cites no authority for his argument, and nothing in Rule 2002 or the Fourth Amendment limits search warrants to the production of tangible property. *Commonwealth v. Bagley*, 408 Pa.Super. 188, 596 A.2d 811 (1991). Furthermore, Section 6801(b)(1) of the Drug Forfeiture Act permits seizure of property subject to forfeiture without process if the seizure is incident to a search under a search warrant. The search warrant issued in this case authorized the Commonwealth to take possession of the Merrill Lynch Accounts, and directing Merrill Lynch to freeze the accounts was a reasonable way to effectuate the authorized seizure.[4]

### III

■ Appellant argues that the trial court's orders relating to his accounts

---

**3.** The trial court concluded that Appellant waived his challenges to the search warrant for the Merrill Lynch Accounts by failing to include them in a timely pre-trial omnibus motion pursuant to Pa.R.Crim.P. 323 (relating to the suppression of evidence). However, Appellant correctly notes that he sought the return of his property in his motion to quash rather than the suppression of evidence, and thus Rule 323 is inapplicable. Despite incorrectly finding that Appellant had waived these challenges the trial court addressed their merits. Accordingly, the Court will consider the merits of Appellant's challenge to the search

warrant in the appeal docketed at No. 2498 C.D.1998.

**4.** In light of the Court's conclusion that Appellant's arguments in the appeal docketed at No. 2497 C.D.1998 regarding the seizure of his property lack merit, there is no need for the Court to address the trial court's reliance upon the coordinate jurisdiction rule in its March 31, 1998 order. That rule was invoked by the trial court to avoid rendering a decision contrary to the decision of another judge of the court on Appellant's motion to quash the search warrant.

should be reversed because the proceeds theory is inapplicable to drug paraphernalia. Forfeiture statutes must be strictly construed. *Commonwealth v. $2,523.48 U.S. Currency*, 538 Pa. 551, 649 A.2d 658 (1994). Money, negotiable instruments, securities and other things of value are forfeitable pursuant to Section 6801(a)(6)(i)(A) if they are furnished or intended to be furnished in exchange for a controlled substance or if they are proceeds traceable to such an exchange.[5] Alternatively, money, negotiable instruments, securities and other things of value are forfeitable pursuant to Section 6801(a)(6)(i)(B) if they are used to facilitate any violation of the Controlled Substance Act.

The trial court granted Appellant's motion for nonsuit with respect to the Commonwealth's petition for forfeiture of the bank accounts pursuant to Section 6801(a)(6)(i)(A) because the Commonwealth failed to prove that the money used to purchase drug paraphernalia from Appellant represented proceeds from an exchange for a controlled substance.[6] However, the trial court granted the Commonwealth's petition for forfeiture of the bank accounts pursuant to Section 6801(a)(6)(i)(B), concluding that the bank accounts were used to facilitate the sale of drug paraphernalia or contain proceeds traceable to money used to facilitate the sale of drug paraphernalia. Appellant contends that the court erred in granting forfeiture on the basis that the accounts contain proceeds traceable to money used to facilitate the sale of drug paraphernalia because Section 6801(a)(6)(i)(B) does not contain the language "and all proceeds traceable".

The term "facilitate" as used in Section 6801(a)(6)(i)(B) broadly encompasses any use or intended use of the property which makes trafficking in contraband less difficult and laborious. *Commonwealth v. One 1979 Lincoln, Four Door Sedan*, 344 Pa.Super. 171, 496 A.2d 397 (1985). The Fidelity Account is in the name of S&S Records. The testimony of the police officer who made undercover purchases in the store and the police expert witness who opined that the inventory of the store was drug paraphernalia provides competent evidence to support the trial court's finding that Appellant operated the store for the sale of drug paraphernalia in violation of Section 13(a)(33) of the Controlled Substance Act, 35 P.S. § 780–113(a)(33). It follows that the Fidelity Account, which was in the name of that business, facilitated its operation.

The Commonwealth presented evidence that Appellant transferred funds from the Fidelity Account to the Merrill Lynch and Corestates Accounts. Therefore the value of the funds which Appellant used to facili-

---

**5.** Section 6801(a) of the Drug Forfeiture Act provides in pertinent part:

**Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

. . . .

(6) (i) All of the following:

(A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.

(B) Money, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act.

**6.** Drug paraphernalia is not a controlled substance. Section 2 of the Controlled Substance Act defines "controlled substance" as "a drug, substance, or immediate precursor included in Schedules I through V of this act." 35 P.S. § 780–102(b).

tate his illegal drug paraphernalia business now resides in the Merrill Lynch and Corestates Accounts. Section 6801(a)(6)(i)(B) provides for the forfeiture of "[m]oney, negotiable instruments, securities *or other things of value.*" This language is sufficiently general to authorize the forfeiture of the value that the funds in the Fidelity Account represent, wherever that value may be transferred. Any other result would allow the traffickers of drug paraphernalia to amass profits from their illegal businesses and to escape forfeiture of those profits. The Court cannot conclude that this was the legislature's intent when it enacted Section 6801(a)(6)(i)(B).

## IV

■ Finally, Appellant argues that the Commonwealth failed to establish a substantial nexus between the property in question and a violation of the Controlled Substance Act. As mentioned, the evidence in the record supports the trial court's finding that S&S Records was operated for the sale of drug paraphernalia. The particular combination of inventory at the store combined with the testimony of the Commonwealth's witnesses is more than sufficient to establish that Appellant knew that the paraphernalia was being sold for use with controlled substances. Thus there is a substantial nexus between a violation of the Controlled Substance Act and all property connected with the store. Furthermore, the marked $20 bill provides a nexus between the illegal drug paraphernalia business and the currency found at Appellant's residence. Also, the record supports the inference that the currency found in the Mercedes–Benz derived from the illegal drug paraphernalia business.

■ The nexus between the illegal drug paraphernalia business and the Fidelity Account is clear because that account is in the name of the illegal business. How-

ever, the sum of the transactions from the Fidelity Account to the Merrill Lynch and Corestates Accounts is only a part of the funds in those accounts. In *Commonwealth v. Fidelity Bank Accounts,* 158 Pa. Cmwlth. 109, 631 A.2d 710 (1993), the Court held that the Commonwealth could meet its burden of establishing a nexus by a preponderance of the evidence between funds in bank accounts and an illegal drug trafficking operation by showing a vast disparity between the accumulated assets and any legitimate income by the owners of the property. While the owners were not obligated to present evidence of a legitimate source for the funds, their failure to do so left the preponderance of the evidence tipped in the Commonwealth's favor. Appellant presented no evidence of a legitimate source of income to explain the assets in the Merrill Lynch and Corestates Accounts. Appellant suggests that some of the funds were generated by legitimate store sales or were transferred to him from his wife, who is employed as a medical doctor. Appellant presented no evidence to corroborate this claim.

■ Appellant is correct, however, that the Commonwealth's evidence cannot support the forfeiture of funds that were deposited in the Merrill Lynch and Corestates Accounts prior to the time that the Commonwealth proved the operation of an illegal drug paraphernalia business. He asserts that the trial court found no evidence of drug paraphernalia purchases before 1992 but nonetheless ordered forfeiture of accounts opened in or before 1989. In *Fidelity Bank Accounts* the Court ordered the return of all monies deposited into the appellants' bank account or paid into their insurance policies prior to August 1982. The evidence of record established that the appellants' illegal drug trafficking business was in existence at that time.

Accordingly, this case must be remanded for the trial court to determine when Appellant's illegal drug paraphernalia business was in existence as established by the Commonwealth's evidence and to determine what deposits were made prior to that time. All monies deposited in the Merrill Lynch and Corestates Accounts prior to the time when Appellant's illegal drug paraphernalia business was in existence must be returned unless the evidence demonstrates that part or all of the funds were used to facilitate Appellant's illegal drug paraphernalia business after it was in existence. For the reasons discussed, the trial court's orders dated May 3, 1995 and March 31, 1998 are affirmed. The order dated July 17, 1998 is vacated in part as to forfeiture of the funds in Merrill Lynch Account Nos. 870–56483 and 870–67056 and the funds in Corestates Bank Account No. 20698485, and the case is remanded for findings of fact and a new decision pursuant to this opinion. The July 1998 order is otherwise affirmed.

## ORDER

AND NOW, this 4th day of May, 2001, the orders of the Court of Common Pleas of Philadelphia County dated May 3, 1995 and March 31, 1998 are affirmed. The order dated July 17, 1998 is vacated in part as to the forfeiture of funds in Merrill Lynch Account Nos. 870–56483 and 870–6705 and funds in Corestates Bank Account No. 20698485. The case is remanded in accordance with the foregoing opinion. The July 1998 order is otherwise affirmed.

Jurisdiction is relinquished.