**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**FUNDS IN MERRILL LYNCH**
**ACCOUNT, Owned by**
**Rennick Peart, etc.**

**Commonwealth of Pennsylvania**

v.

**Funds in Merrill Lynch Account,**
**Owned by Rennick Peart,**
**etc.**

**Appeal of: Rennick Peart.**

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 2007.
Decided Nov. 28, 2007.

Jonathan M. Levy, Philadelphia, for appellant.

Michael B. Tolcott, Philadelphia, for appellee.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

The Commonwealth of Pennsylvania (Commonwealth) petitions for review of an order of the Court of Common Pleas of Philadelphia (trial court) which ordered, following remand, that forfeited funds in the amount of $151,211.17, be returned to Rennick Peart (Defendant). Defendant has filed a cross-appeal arguing that the trial court erred in denying him statutory interest of 6% on the wrongfully withheld funds. We affirm.

Defendant was the owner of a store named "S & S Records" in Philadelphia, Pennsylvania. Following police surveillance and an undercover operation, a search warrant was executed for the store. At the store, the police discovered plastic packets, baggies and vials commonly used to package narcotics. Police also discovered razor blades, pipes, scales, safe cans, miniature drug processing systems and invoices listing the sales and delivery of items used to facilitate drug trafficking.

A search warrant was also executed for Defendant's home. There, more ziplock packets and plastic vials were discovered. In total, the police found over 500,000 packets, vials and glassine envelopes. Various amounts of cash and money orders were discovered at Defendant's properties and in Defendant's car, totaling approximately $14,000.00. Additionally, the police discovered bank documents, which led them to obtain search warrants for several of Defendant's bank accounts.[1]

In 1995, the Commonwealth filed petitions for forfeiture under the Controlled Substances Forfeiture Act (Act), 42 Pa.

---

1. In 1995, based on the evidence collected from the search warrants, Defendant was criminally charged with possession of controlled substances and drug paraphernalia. The controlled substances charges were dismissed in 1995. In 1996, Defendant was acquitted of the drug paraphernalia charges.

C.S. § 6801–6802. The Commonwealth sought forfeiture of U.S. currency and real property allegedly used in a criminal enterprise involving the sale and distribution of drug paraphernalia. Defendant responded by filing a motion for nonsuit.

The trial court granted Defendant's motion for nonsuit as to Section 6801(a)(6)(i)(A) of the Act, 42 Pa.C.S. § 6801(a)(6)(i)(A). Pursuant to this section, money furnished or intended to be furnished in exchange for a controlled substance is forfeitable. The trial court held that the Commonwealth failed to establish that the money used to purchase drug paraphernalia constituted proceeds from an exchange for a controlled substance. However, the trial court denied the petition for nonsuit and granted the petition for forfeiture pursuant to Section 6801(a)(6)(i)(B) of the Act, 42 Pa. C.S. § 6801(a)(6)(i)(B). Pursuant to this Section, forfeiture applies to "[m]oney, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act."

The trial court granted forfeiture of the following items: Defendant's property at 5703 Chester Avenue; cash discovered in Defendant's home; his 1991 Mercedes-Benz; $1,100.00 discovered in Defendant's car; $2,000.00 in money orders; $185.00 from Defendant's wallet and $53.00 from his cash register. The trial Court also ordered that all funds in Defendant's accounts with Merrill Lynch, Fidelity Bank Corporation, Corestates Bank and Germantown Savings Bank be forfeited. The funds placed in two Merrill Lynch accounts totaled $279,179.00. The funds placed in two Fidelity Bank Corporation accounts totaled $41,000. The funds in Corestates Bank totaled $9,949.27 and the funds in Germantown Savings Bank totaled $26,872.74.

Defendant appealed the grant of forfeiture to this Court. His appeal was determined in *Commonwealth v. Funds in Merrill Lynch Account, Owned by Rennick Peart,* 777 A.2d 519 (Pa.Cmwlth.2001). In his appeal, Defendant raised an issue as to the validity of the search warrant for his residence and as to the validity of the search warrant for his bank accounts. He also argued that the Commonwealth only had the authority to search tangible property and that the proceeds theory was inapplicable to drug paraphernalia. These claims were all rejected by the Court.

Defendant further argued that the Commonwealth failed to establish a substantial nexus between his illegal drug paraphernalia business and the bank accounts that were forfeited. We accepted in part Defendant's argument that a nexus was not established.

We explained that the Commonwealth could meet its burden of establishing a nexus by a preponderance of the evidence "by showing a vast disparity between the accumulated assets and any legitimate income by the owners of the property." *Funds in Merrill Lynch Account, Owned by Rennick Peart,* 777 A.2d at 526. As such, we determined that the Commonwealth did present sufficient evidence to forfeit the monies in the bank accounts, with the exception of the monies deposited in the Merrill Lynch and Corestates Bank accounts prior to the time the Commonwealth alleged that Defendant was conducting an illegal drug paraphernalia business.

We noted that the trial court found no evidence that drug paraphernalia purchases were made before 1992. However, the trial court permitted the forfeiture of accounts that were in existence in 1989. As such, we reached the following decision:

Accordingly, this case must be remanded for the trial court to determine when [Defendant's] illegal drug paraphernalia business was in existence as established by the Commonwealth's evidence and to determine what deposits were made prior to that time. All monies deposited in the Merrill Lynch and Corestates Accounts prior to the time when [Defendant's] illegal drug paraphernalia business was in existence must be returned unless the evidence demonstrates that part or all of the funds were used to facilitate [Defendant's] illegal drug paraphernalia business after it was in existence.

*Funds in Merrill Lynch Account, Owned by Rennick Peart,* 777 A.2d at 527. Thus, the case was affirmed in part and vacated with regard to the Merrill Lynch and Corestates accounts. It was then remanded to the trial court.[2]

At the remand hearing, further evidence was not presented. However, the Commonwealth did present argument to the trial court. The Commonwealth stated that the parties would stipulate that the criminal enterprise began on October 11, 1989. The parties further stipulated that prior to October 11, 1989, Defendant had a total of $151,211.17, in his Merrill Lynch and Corestates accounts. Also, while funds were added and withdrawn from the accounts over the years, the total balance was never less than $151,211.17.

The trial court asked the Commonwealth if it could prove that any or all of the $151,211.17 was used to promote the illegal business. The Commonwealth replied that it could not. (R.R. at 33a). The

Commonwealth instead argued that as it had established that Defendant had commingled legal and illegal funds, Defendant had the burden of establishing that all the money was not tainted. The trial court disagreed, noting that the Commonwealth had already conceded that the money in the account prior to October 11, 1989, was not part of the criminal enterprise. As such, the trial court determined that the funds were not derived from nor used in furtherance of an illegal enterprise and ordered the funds returned to Defendant.

 The Commonwealth now appeals to this Court.[3] The Commonwealth alleges that the trial court erred by returning $151,211.17, in funds to Defendant. The Defendant has filed a cross-appeal alleging that the Commonwealth should be charged with paying 6% interest on the funds wrongly held from him for twelve years.

The Commonwealth argues that the trial court "deemed the Remand Order a command to return the money on deposit in October 1989, and did not evaluate the existing record to determine whether all or part of that money facilitated claimant's illegal drug paraphernalia business." (Commonwealth's brief at 16). We reject the Commonwealth's argument that the trial court misunderstood the remand order. The trial court stated to the Commonwealth that the money deposited prior to October 11, 1989, had to be returned unless the Commonwealth could prove that all or part of it was used during the pendency of the illegal business. (R.R. at 33a). This is exactly what we ordered the trial court to consider on remand.

---

**2.** Our remand order was dated May 4, 2001. However, the trial court alleges that it was never given notice of the remand. In 2006, the Commonwealth brought the matter to the attention of the trial court and a hearing was scheduled.

**3.** Our review of a forfeiture proceeding is limited to determining whether the trial court abused its discretion, committed an error of law, or made findings not supported by competent evidence. *Strand v. Chester Police Department,* 687 A.2d 872 (Pa.Cmwlth.1997).

In support of its argument that, because it was established that Defendant had commingled legal and illegal funds it was Defendant's burden to establish that all of the money was not tainted, the Commonwealth cites to *Commonwealth v. $6,425.00 Seized from Esquilin*, 583 Pa. 544, 880 A.2d 523 (2005). In *Esquilin*, the police observed the defendant and an accomplice standing on a street corner. Police observed people handing money to the accomplice and the accomplice then giving the money to the defendant. The accomplice would then give a small object to the person. The police stopped several of the people involved in the exchange with the accomplice and found them to be in possession of crack cocaine. Police then arrested the accomplice, who was also found to be in possession of crack cocaine. Police also arrested the defendant. It was discovered that he had $6,425.00 in cash.

The Commonwealth filed a petition for forfeiture of the $6,425.00. The trial court determined that there was a nexus between the money seized and illegal drug activity. As the defendant did not offer any evidence that the money was lawfully acquired, the forfeiture was granted.

On appeal, the Commonwealth Court reversed the trial court's finding that all of the money was properly seized. We concluded that the police had observed $60.00 in drug transactions, but did not show that the remainder of the money had been used for illegal purposes. The Commonwealth then appealed to the Pennsylvania Supreme Court (Supreme Court).

The Supreme Court explained that the Commonwealth had the burden of proving, by a preponderance of the evidence that a nexus existed between the money and a violation of the Act. Once that burden was met, the burden then shifted to the defendant to establish that he lawfully acquired the money and that it was not unlawfully used or possessed by him.

The Supreme Court determined that as the defendant was observed conducting drug deals it was more likely than not that the money in his possession was intended to be used to facilitate an illegal business. As such, the Commonwealth met its burden of establishing that a nexus existed between the money and a violation of the Act. Thus, the burden then shifted to the defendant to establish that he lawfully acquired the money, which he failed to establish.

In the present case, the trial court rejected the Commonwealth's argument that *Esquilin* was on point. The trial court noted that in *Esquilin* the money was alleged to have been earned by the defendant during the time of the criminal enterprise. Here, the parties agreed that Defendant had money in an account prior to his involvement in an illegal business. As such, the trial court concluded as follows:

> [U]nless you can show that some of that money was used to start up the illegal business or to pay for the illegal business, if the money derived from the illegal business and either put in or taken out during the time it was in effect, didn't effect this other sum of money, then the defendant gets it back.

(R.R. at 34a).

The trial court explained that *Esquilin* provides that where the Commonwealth finds assets in an illegal business, it may assume the assets are part of the illegal business. However, here the Commonwealth may not assume the all of the money in the accounts stems from the illegal business, as the Commonwealth has conceded that $151,211.17, was placed into the accounts prior to the illegal business coming into existence. Therefore, to meet its burden, the Commonwealth must present evidence that the money was used in some way to facilitate the illegal business. At

the hearing, the Commonwealth conceded that it does not have such evidence. Therefore, we agree with the trial court's determination that the Commonwealth failed to meet its burden.

■ Defendant has filed a cross-appeal alleging that as the Commonwealth has erroneously deprived him of the $151,211.17, since February 13, 1995, he is entitled to statutory interest of 6% on the wrongfully withheld funds. However, Defendant fails to establish a common law or statutory basis for his claim. In his brief, Defendant cites to cases involving contract law. Such cases are not relevant to the present action as the matter does not involve a contract.

■ Defendant also claims that he is entitled to interest based on the common law tort of conversion. There, recovery of interest is permitted for the wrongful withholding of property of another. *Centennial School District v. Kerins,* 840 A.2d 377 (Pa.Cmwlth.2003). However, under this theory interest is only payable where (1) the debt was liquidated to a degree of certainty, and (2) "the duty to pay it must have become fixed." *Centennial School District,* 840 A.2d at 382. Here, the Commonwealth properly sought to recover Defendant's money under the Act. It did not wrongfully withhold the money and has had no fixed duty to pay it pending court determination. As such, we conclude that the trial court did not err in denying Defendant's claim for interest.

Accordingly the order of the trial court is affirmed.

## ORDER

AND NOW, this 28th day of November, 2007, the order of the Court of Common Pleas of Philadelphia is affirmed.