## Pennsylvania Company for Insurance on Lives, etc., Trustee and Adm'r d. b. n. c. t. a. under Will of C. H. Baker *v.* Phila., Germantown & Norristown R. R., Appellants.

*Forgery—Evidence of other forgeries of same manufacture.*

On the trial of an issue to determine whether certain papers are forged or not, evidence of the forging of other papers of the same kind with those in question is admissible to demonstrate the means and the individual by which the forgery in the case trying was effected.

In an action by a stockholder against a corporation to recover damages for the wrongful transfer of plaintiff's shares upon a power of attorney which is alleged to have been forged, evidence is admissible to show that the desk of the alleged forger contained a genuine signature of the stockholder torn from his ledger, and that in the same desk were other completed and partly completed signatures, imitating the genuine signature; and such signatures are admissible.

*Measure of damages—Transfer of forged stock.*

Where stock is wrongfully transferred under a forged power of attorney, it seems that the measure of damages in an action against the company is the market price of the stock at the time of the transfer.

*Actions—Parties—Tortious conversion—New trustee.*

An action for an alleged tortious conversion of property while under the dominion of the executors and trustees is rightly brought in the name of the administrator and trustee d. b. n. c. t. a. after the removal of the original trustee.

Argued Jan. 23, 1893. Appeal, No. 67, July T., 1892, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1890, No. 406, on verdict for plaintiff. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM, MITCHELL and DEAN, JJ.

Trespass to recover damages for an alleged wrongful conversion of 292 shares of plaintiff's stock.

At the trial, before THAYER, P. J., it appeared that, at the time of the alleged wrongful conversion, two hundred and ninety shares of stock in defendant's corporation stood in the name of Charles H. Baker, deceased; and that John R. Baker was the surviving executor and testamentary trustee of decedent's estate, to which trust plaintiff has since succeeded. The general management of the estate, however, was intrusted to John R. Baker, Jr., a son of John R. Baker. Plaintiff proved by defendant's books that the stock had been trans-

ferred out of the name of Charles H. Baker into that of John R. Baker, Jr., on Oct. 8, and Oct. 28, 1890, and new certificates issued to him. Evidence was then given that the trustees had not authorized the transfer or cancellation.

Defendant offered evidence to prove that the signature to the powers of attorney under which the stock had been transferred was genuine; or if the signature of John R. Baker had been affixed by John R. Baker, Jr., it had been done under authority of the elder Baker, and to show this authority the course of dealing with the estate was gone into, among other evidence that referred to in defendant's 5th point below.

Defendant also produced a letter dated Nov. 18, 1890, to the bankers of John R. Baker, Jr., signed by John R. Baker, advising that all securities in the name of Chas. H. Baker were his, the senior Baker's, property and that he had given the junior Baker authority to hypothecate or sell them.

Plaintiff in rebuttal produced evidence to show that the powers of attorney and the above letter of Nov. 18, 1890, were forgeries.

Hampton L. Carson, Esq., was permitted to testify, under objection and exception, that the letter of Nov. 18th was shown to him on the 20th, and he thereupon called upon John R. Baker, Jr., for an explanation, but that the latter absconded the next day. [4]

The same witness was permitted, under objection and exception, to testify in relation to the office desk of John R. Baker, Jr., and the papers found there, among others a page containing the signature of John R. Baker, torn from the latter's account book; also some twelve powers of attorney in blank containing signatures and parts of signatures of John R. Baker and Elizabeth Baker. [5]

Frederick R. Baker, a brother of John R. Baker, testified that a blank power of attorney in the name of his father found in his brother's desk at Devon a few days after the flight was a forgery—the evidence being received under objection that it was raising a new issue. [6]

D. H. Carvalho, an expert witness as to handwriting, testified, under objection and exception, that he compared the signature of John R. Baker on the torn page and the signatures and parts of signatures to the twelve powers of attorney men-

tioned above, and from such comparison testified to his belief as to the forgery of the signatures to the powers of attorney aforesaid, and further that the signatures to the two powers of attorney in question were forged by the same person and in the same way as were the signatures to the thirteen aforesaid found in the desk of John R. Baker, Jr. [7]

The court admitted, under objection and exception, the twelve blank letters of attorney and the page torn from the account book. [8]

John R. Baker has died since the appeal was taken.

Other facts appear by the opinion of the court below, refusing a new trial.

Defendant's points were, among others, as follows:

" 1. The action being for an alleged tortious conversion of property belonging to the estate of Charles H. Baker, deceased, while the same was under the dominion and control of his surviving executors, the right to sue for damages for such conversion accrued to them and the survivor of them; and the plaintiffs cannot maintain an action for the same damages in their own names, and therefore the verdict should be for the defendant." Refused. [1]

" 5. That if the jury shall find from the evidence with respect to the two powers of attorney to transfer city loan in March, 1890, that the signature of John R. Baker had not been written by him, but by John R. Baker, Jr., and knowing this and intending his acknowledgment to be acted upon, John R. Baker acknowledged to John Mason, the transfer agent, as he has done in open court in the trial of this cause, that the signatures were his own and genuine, such conduct rendered them as lawful as if he, John R. Baker, had actually written them, and is evidence of the father's previous authority to the son to sign; and if you find that thereafter John R. Baker did not take from his son the key to the box where the certificates for the 292 shares of the defendant company were kept and end his authority to act for him, you are at liberty to infer that, if the son actually signed the name of his father to the two powers of attorney to transfer the 292 shares of stock, he did so by his father's previous authority, and the signatures to the powers in question were, therefore, not forged." Refused. [2]

" 7. John R. Baker testified that he wrote his name to sev-

eral powers of attorney which were not filled up and were similar to those used to transfer the 292 shares of the stock of the defendant company, and that he gave them to his son, John R. Baker, Jr., but cautioned him as to the way they should be used. There has been no testimony whatever what the caution was, neither any what the son did with these powers or where they now are; and if this absence of testimony with the evidence in the case has left you in doubt whether or not the powers to transfer the 292 shares of the defendant company were those so signed by John R. Baker, you should not find a verdict for the plaintiff." Refused. [3]

Verdict for plaintiff for $39,727.10. Defendant's motion for new trial was refused in the following opinion by THAYER, P. J.:

" In this action the plaintiff claimed to recover damages from the defendants for the conversion of two hundred and ninety shares of its capital stock, which stood on their books in the name of Charles H. Baker, at the time of his death, and which the defendants had permitted to be transferred to John R. Baker, Jr., under two powers of attorney, purporting to have been signed by Elizabeth Baker and John R. Baker, surviving executors of Charles H. Baker, deceased, but which signatures of Elizabeth Baker and John R. Baker were alleged to have been forged by John R. Baker, Jr., the person to whom the transfers were made and to whom the defendant company issued new certificates.

" The defendants allege that the signatures affixed to the two powers of attorney were the genuine signatures of Elizabeth Baker and John R. Baker. Charles H. Baker, to whom the shares originally belonged, died in the year 1888. Elizabeth Baker and John R. Baker, his surviving executors and trustees, were discharged December 6, 1890, and on the 8th of December, 1890, the present plaintiff was appointed trustee in in their place, and administrator d. b. n. of the estate of Charles H. Baker, deceased.

" The single issue of fact tried by the jury was whether the signatures to the two powers of attorney were the genuine signatures of Elizabeth Baker and John R. Baker, or whether they were forged by John R. Baker, Jr.

" On this issue ten witnesses, including John R. Baker the elder, himself, were called to prove that the signatures were

forged, and five were called to prove that in their opinion they were genuine. The two subscribing witnesses to the signature of John R. Baker, who were boys, testified that they had never seen John R. Baker in their lives, and that they had affixed their names to the two papers as witnesses at the request of John R. Baker, Jr.

" Catherine Riley, the subscribing witness to the signature of Elizabeth Baker, testified that she had never attested the paper, and that the signature thereto, as a witness, purporting to be hers, was a forgery. Other witnesses prove that her pretended signature was in the handwriting of John R. Baker, Jr.

" In addition to this it was proved by the witnesses on both sides that John R. Baker, Jr., had, by means of forged signatures, plundered the estate of almost everything that was of value and had then fled the country. After he had run away his desk was opened, and in it was found, among other papers, a sheet of blue paper, torn from the ledger of John R. Baker, Sr., containing an account with the genuine signature of John R. Baker, Sr., attached thereto.

" Two experts of very large experience testified that the disputed signatures to the two powers of attorney were forged copies of the genuine signature of John R. Baker, Sr., attached to this blue sheet torn from his ledger and found in the desk of John R. Baker, Jr., and that the forgeries had been effected by tracing the genuine signature attached to the blue paper.

" In the same desk were found a number of forged signatures of the names of John R. Baker and Elizabeth Baker, in various stages of execution, some written in full, some half written, showing that John R. Baker had industriously practiced the imitation of the signatures of his father and grandmother, taking as his model for the former the genuine signature on the blue sheet torn from the account book.

" These papers were offered in evidence on the part of the plaintiff, and, after strenuous objections made by the defendants, were permitted to go to the jury. The objection made was that they were irrelevant; that they were *res inter alios acta,* and had nothing to do with the case, and that it was incompetent to prove that the powers of attorney had been forged by John R. Baker, Jr., by showing that he had forged other papers.

" But it is to be observed that the real object of the evidence objected to and admitted was to prove, not that John R. Baker, Jr., had forged other papers, but that he had forged the particular papers in question in this case.   The papers offered went to demonstrate the means by which the forgeries in this case were effected and the individual by whom they had been perpetrated.

" It was putting in evidence the workshop and the material, in and by which the nefarious business had been carried on, and by means of which the forgeries in this case had been accomplished.   The evidence was, therefore, not only relevant, but had a direct and very strong bearing upon the issue.   It was not only not irrelevant, but had a direct tendency to prove the plaintiff's allegation that John R. Baker, Jr., had fabricated the signatures in question by means of which he obtained from the defendants. the transfer of the stock ; for it showed him in the very act, as it were, of practicing for the forgeries which he made.

" It was in no sense an offer to show that a man has committed one forgery by proof that he has committed another, but an offer to show that he had committed the particular forgeries in question by producing the means and the model by which he had worked in manufacturing the particular forgeries, which were the subject of this suit.

" There has been some conflict in the decisions as to whether on a trial for forging bills and notes proof is competent to show the forging of other bills and notes, where they are of a different kind ; but, according to Mr. Phillips, the cases are uniform that proof of the forging of other bills of the same kind with the one in question on the trial is admissible, 1 Phil. Ev. 769, and Cowen and Hill's Notes, 4th Am. ed., and he expresses the opinion that the decided balance of authority would seem now to be in favor of such evidence, whether the other bills are ejusdem generis or not.

" In the case of Rex v. Taverner, Carr. Supp. 195, reported in note to Rex v. Smith, 4 Car. & P. 411, it was distinctly held that proof of another forgery may be put in evidence where it is connected with the principal case, or it can be shown that the notes are of the same manufacture, and Lord ELLENBOROUGH in Rex v. Wylie, 1 N. R. B. P. 92, s. c., 2 Leach, 985, cites a case

where a man having committed three burglaries in one night, having stolen a shirt in one place and left it in another, it was held that the burglaries were all so connected that evidence relating to them all was admissible in the case on trial.   Evidence of the circumstances connected with a particular forgery is not to be excluded because its tendency also is to prove the commission of another offence: Watson v. The People, 64 Barb. 130 (52 N. Y. 645).

"But the truth is that in the present case the object of the evidence objected to and admitted was not to show the perpetration of other forgeries, but the steps taken, and the modus operandi pursued in the execution of the particular forgeries in dispute in this case.   That it was entirely competent for that purpose, being closely connected with the facts relating to the alleged forgeries of the two powers of attorney, does not, I think, admit of doubt, and requires no citation to justify its admission.

"In regard to the other point argued, viz., the measure of damages, we are all of opinion with the defendant's counsel that the criterion adopted in the assessment of damages was erroneous, viz. : That the defendants were responsible for the highest price reached by the stock between the date of the conversion and the time of the bringing of the suit, to which were to be added all dividends since declared.

"The cases relied upon by the plaintiffs to maintain this proposition, the Bank of Montgomery v. Reese, 26 Pa. 143, and Musgrave v. Brockendorf, 53 Ib. 310, are not applicable to the circumstances of the present case.   These cases hold that the damages are properly measured by that rule when the conversion has been wrongful and involves a deliberate breach of trust on the part of the defendant.   The Bank of Montgomery v. Reese was decided upon the ground that a trustee shall not be allowed to put in his own pockets any of the profits arising from the trust estate.   See Wilson v. Whitaker, 49 Pa. 117, sub finem, and the opinion of the Supreme Court in that case.

"The other cases cited by the plaintiff's counsel on this point seem to have little application.   The more recently decided cases, Huntingdon & Broad Top Railroad v. English, 86 P. S. R. 247, North v. Phillips, 89 Ib. 250; Neiler v. Kelley,

69 Ib. 403 ; Work v. Bennett, 70 Ib. 484, decide that in all cases not involving an actually wrongful conversion or breach of trust, the old and well-established rule still prevails that the value of the stock at the time of the technical conversion, with interest thereon, is the true measure of damages in such cases as this.

" In the present case no wrong was intentionally done by the defendants, and they reap no benefit whatever from the transaction. They were deceived by the cunning devices of a third person, and innocently permitted the transfer of stock and the issuing of new certificates to a person whom they in good faith supposed entitled to them.

" It turned out, according to the finding of the jury, that the powers of attorney authorizing the transfer were forged. They were thus guilty of a technical conversion. They were not guilty of any intentional violation of their duty as, trustees. They are responsible in damages for having permitted a transfer of the shares upon powers of attorney which were forged, but after the transfer they were no longer trustees for the plaintiff or the former owners of the stock.

" They had made an irremediable, though innocent, mistake, for the consequences of which they are liable. It was not in their power to deliver this stock to the plaintiff on the 10th of January, 1891, when the plaintiff demanded it, for, by the fraud and forgery of which they were the innocent victims, it had passed into the hands of John R. Baker, Jr., the author of the wrong, and had been squandered by him in his speculations.

" It was gone beyond the possibility of reclamation by the defendants, and they had no authority to issue new stock to the plaintiff in lieu of that which had passed from their control. They are to be treated, therefore, not as voluntary wrongdoers, but as persons who, without any benefit to themselves, have incautiously and negligently permitted an act which was injurious to the plaintiff.

" The true measure of damages to be applied in this case was the value of the stock at the date of the technical conversion, viz., January 10, 1891, which, according to the uncontradicted evidence of Mr. Drayton, was $126 per share, with interest added from that date to the date of the verdict. To that extent the verdict rendered must be corrected and reduced.

" Except in the class of cases defined by the Bank of Montgomery v. Reese, the rule regulating damages in cases arising out of the conversion of stocks or breaches of contracts relating to stock is, as was observed in North v. Phillips, Neiler v. Kelly, and the other cases, the same as that relating to any other marketable commodity, and this rule is the old common law rule which measures the damages for the conversion of stocks in the same manner that it measures the damages for the conversion of any chattel, viz.: by the value of the stock at the time of the conversion, with interest thereon to the date of the verdict, leaving out of the calculation all fluctuations in value and all dividends or other adventitious increment which may have been derived by other persons in possession of the stock, and substituting for them interest on the value.

" It is therefore ordered that this rule for a new trial be discharged, on condition that the plaintiff shall within twenty days file a remittitur for so much of the verdict as exceeds the sum of $38,781.11; in default thereof rule to be made absolute."

Remittitur filed and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–3) instructions; (4–7) rulings on evidence, quoting instructions, bills of exception, and evidence; and (8) admission of blank letters of attorney, etc., as above, without quoting them, but referring to fac-similes of them in special appendix.

*E. Hunn Hanson* and *J. B. Townsend, Richard P. White* with them, for appellant.—The evidence of Mr. Carson was improperly admitted: Jackson v. Smith, 7 Cowen, 719; Thompson v. Bowie, 4 Wall. 463; Balcetti v. Sorani, Peake's N. P. 192; Thompson v. Mosely, 5 Car. & P. 501; Griffits v. Payne, 11 A. & E. 131; s. c., 3 P. & D. 108; Cohen v. Teller, 93 Pa. 123; Shaffner v. Com., 72 Pa. 60. The authorities cited by the learned judge, properly read, are in entire harmony with the following cases, where it was held that evidence that the defendant had uttered other forged bills could not be received: Rex v. Millard, R. & R. 245; Bayley on Bills, 4th ed. 450; Rex v. Smith, 2 Car. & P. 633; Rex v. Long, 9 Car. & P. 179.

In an indictment against defendant for forgery, evidence that soon after defendant's arrest similar forgeries were found in the pockets of his wife was held inadmissible: People v.

Thomas, C. R. 256. In Rex v. Salt, 3 F. & F. 834, it is recognized that other forgeries must, to be admissible, have been issued before the one in question. In Gibson v. McCarty, Cases temp. Hard. 311, it was held that conviction of the alleged writer for forgery was not admissible in a suit on the note by the holder against the maker.

Plaintiffs were not the proper parties to the action: Slaymaker v. Bank, 103 Pa. 616; Loring v. Salisbury Mills, 125 Mass. 138; Armory v. Delamirie, 1 Sm. L. C., Hare & Wallace's notes, 7 Am. ed. 645, 649–651, 657, Bradley v. Copley, 1 C. B. 685; Fairbanks v. Phelps, 22 Pick. 535; Curd v. Wunder, 5 Ohio, 92; Ames v. Palmer, 42 Maine, 197; Reinheimer v. Hemingway, 35 Pa. 432; Ledbetter v. Blassingame, 31 Ala. 495; Mathers v. Trinity Church, 3 S. & R. 512.

*Geo. Tucker Bispham* and *John G. Johnson, John Hampton Barnes* with them, for appellee.—The admission of the testimony as to the flight of John R. Baker, Jr., and the admission in evidence of the papers found in his desk were right. Such evidence, as far as criminal cases are concerned, is akin to the admission of evidence of the perpetration of other crimes of a similar character to that for which the defendant was indicted, where the purpose of such evidence is to show a system or plan of operations, or that the act constitutes one of a scheme of similar fraudulent or criminal acts: Wh. Ev. § 39; Green. Ev. § 52; Stephen, Ev., art. 12; Carver v. People, 39 Mich. 786; Regina v. Jarvis, 33 E. L. & Eq. 567; People v. Cassidy, 133 N. Y. 612; Faucett v. Nichols, 64 N. Y. 377; Thomas v. Miller, 151 Pa. 482.

The opinion of the expert was properly admitted: Taylor, Ev. § 337; Travis v. Brown, 43 Pa. 9; Williams v. Taunton, 125 Mass. 34; Eidt v. Cutter, 127 Mass. 522.

The evidence which has been so strenuously objected to by appellant was properly admitted, because it contradicted the proof offered by defendant to the effect that there was a course of dealing between Mr. Baker, the elder, and his son, John R. Baker, whereby the former connived at the use by the latter of the trust securities.

The suit was rightly brought: Act of June 14, 1836, § 25, P. L. 633; note to Armory v. Delamorie, 1 Sm. L. C. 645, 7th Am. ed.

PER CURIAM, February 6, 1893:

This is an important case both as regards the principles involved and the amount in controversy. The learned president of the court below has discussed it so well in his opinion refusing a new trial, that it is unnecessary to add anything to what he has so well said. We affirm the judgment for the reasons there given by him.

Judgment affirmed.