**CENTENNIAL SCHOOL DISTRICT**

v.

**William J. KERINS and Fidelity Deposit Company of Maryland, Appellants.**

Commonwealth Court of Pennsylvania.

Argued June 2, 2003.

Decided Dec. 5, 2003.

Reargument and Rehearing En Banc Denied Feb. 3, 2004.

---

Catherine Anne Porter, Newtown, for appellants.

Timothy J. Duffy, Langhorne, for appellee.

BEFORE: McGINLEY, J., COHN, J., and MIRARCHI, Jr., Senior Judge.

OPINION BY Judge COHN.

In this case, we must determine whether a government body may charge a tax collector, and his surety, interest on six months of taxes that were collected, but

not remitted, to the district within the time frame imposed by statute.

Appellant Kerins had been appointed to the position of Tax Collector for Upper Southampton Township following the resignation of the elected Tax Collector. As part of his responsibilities, Kerins also collected taxes for the Centennial School District (District). His responsibilities as Township and District Tax Collector were governed by Section 25 of the Local Tax Collection Law (LTCL) Act of May 25, 1945, P.L. 1050, *as amended*, 72 P.S. § 5511.25. Section 25 required Kerins to provide to the District, by the tenth of each month, the taxes he collected in the prior month, along with a monthly accounting report detailing these collections. Although Kerins collected taxes in each month from August 1999 through January 2000, he did not submit to the District the collected taxes for that period or the monthly accounting reports for these collections until February 2000.

On February 4, 2000, Kerins issued a check to the District in the amount of $1,294,411.29, the total amount of taxes collected from August to January. Shortly thereafter, Kerins submitted an informal accounting report covering that same period.[1]

Using the data from the informal report, the District's Business Administrator (Administrator) conducted an informal audit. The Administrator used the results of his audit to prepare a "Profile of Taxes Collected but Not Remitted" (Profile), that detailed, *inter alia*, the sums collected in each of the six months. The Profile also contained a discussion of interest that the District could have earned on each monthly sum collected had each been paid over in a timely fashion. In calculating interest, the Administrator utilized interest rates for certificates of deposit available throughout the six month period.

In the months following completion of the Profile, the District sent several letters to both Kerins and his surety, Fidelity Deposit of Maryland (Fidelity), indicating the District's position that interest was owed. Neither Kerins nor Fidelity responded. Subsequently, the District filed a Certificate of Liability[2] with the common pleas court certifying that Kerins owed it a total of $17,177.56 in interest.[3] The Certificate was signed by the superintendent and bore the seal of the school board. The District supported its claim by attaching the Profile as an exhibit to the Certificate. The District served the Certificate and Profile upon Kerins by certified mail and on his surety by regular mail.

---

1. Several weeks later, he submitted a formal version of the report. The record does not indicate what, if any, differences existed in the data within the two reports.

2. The Certificate of Liability was filed pursuant to Section 41(a) of the LTCL, 72 P.S. § 5511.41(a), which provides that:

 In all cases where, in any settlement of the accounts of any tax collector, the taxing district or the auditing authority thereof, shall subject a tax collector to *any* liability, a certificate under the hands and seals of the corporate authorities, shall be filed in the office of the prothonotary of the court of common pleas of the county, stating the amount due and unpaid by such tax collec-

tor. Notice thereof shall be given by the taxing district, by registered mail, to such tax collector and his sureties.
(Emphasis added.)

3. At hearing on this Certificate, the District acknowledged making some mistakes in its calculation and, subsequently, modified the amount requested from $20,012.43 to $17,177.56. The amount itself was premised upon certificate of deposit rates of 5.7% and 5.8%, depending upon the specific time period. The District applied the respective interest rate to the amount owed for the particular month, assuming that, if it had the money, it would have invested it in certificates of deposit.

In response to the District's Certificate, Kerins and Fidelity (collectively Appellants), filed separate Petitions to Strike or Open the Judgment. The trial court conducted hearings, issued a decree nisi, accepted and reviewed petitions for post trial relief, and issued a Final Decree in favor of the District and against both Appellants in the amount of $17,177.56. Appellants appeal this decision.

■ Before this Court, Appellants raise three basic issues: 1) whether interest can be assessed on collected but unremitted school district taxes; 2) whether the tax collector's surety can be held responsible for this interest; and 3) whether certain documentary evidence was admissible and sufficient.[4]

### May the District Receive Interest on the Amounts Collected but not Timely Paid to It?

■ Appellants maintain that there is neither a common law nor statutory basis for imposition of interest. First, with regard to the common law basis, Pennsylvania courts have long authorized the imposition of interest when amounts are not paid to the lawful owner in a timely manner.

Because "interest is as much a part of substantive debt as principal," it can be imposed as a form of damages, even in the absence of any contractual obligation. *Braig v. Pennsylvania Employes' Retirement Board,* 682 A.2d 881, 886 (Pa. Cmwlth.1996) (citations omitted).[5]

■ There are two requirements that must be met in order for interest to be payable when money is not paid on the date owed: "[1] the debt must have been liquidated with some degree of certainty, and [2] the duty to pay it must have become fixed." *Braig,* 682 A.2d at 886 (citations omitted).

Both of these requirements are met in the case at bar. The amount of taxes Kerins owed to the District was established in the accounting report of the tax receipts that he prepared. The statute fixed the duty to pay those taxes to the District no later than the tenth day of the month following the month in which the taxes were collected. As such, the two elements necessary for imposition of interest were satisfied.

■ Additionally, we note that imposition of interest on a tax collector is consis-

4. In reviewing a trial court decision made as to exceptions to a Certificate of Liability, our standard of review is whether the trial court committed an error of law or made findings not based upon substantial evidence. *C.f. Hegner Pharmacy Services, Inc. v. Borough of Beaver,* 786 A.2d 1030 (Pa.Cmwlth.2001) (applying standard to tax collection appeal case), *petition for allowance of appeal denied,* 568 Pa. 726, 797 A.2d 917 (2002).

5. Appellant correctly notes that our courts have frequently analogized the failure to pay when due, to the common law tort of conversion, which authorizes recovery for the wrongful withholding of personal property of another. *See, e.g., Pennsylvania Company for Insurance on Lives v. Philadelphia, Germantown and Norristown Railroad,* 153 Pa. 160, 25 A. 1043 (1893) (awarding interest for failure to pay stock proceeds on the date due,

likening the temporary withholding to an act of conversion) (cited in *Wolfe v. Pennsylvania Company for Insurances on Lives and Granting Annuities,* 322 Pa. 344, 185 A. 292 (1936)); *Schiller v. Royal Maccabees Life Insurance Co.,* 759 A.2d 942, 945 (Pa.Super.2000) (awarding interest for failure to pay over to decedent's estate insurance proceeds on the date due), *petition for allowance of appeal denied,* 565 Pa. 674, 775 A.2d 808 (2001). *See generally, In re Windsor Communications Group, Inc.,* 79 B.R. 210, 218 (E.D.Pa.1987) (concluding that "Pennsylvania Courts have recognized that, in instances involving conversion or destruction of property, time may be an important factor and plaintiff may not be fully compensated unless an award includes the value of the property calculated from the date of loss or conversion.").

tent with our law. A tax collector stands in a fiduciary capacity to the public for the collected taxes, acting as "an insurer of the public funds ... entrusted to his care." *Witherow v. Weaver*, 337 Pa. 488, 490, 12 A.2d 92, 93 (1940).

 Moreover, the intent or negligence of the payor is not a factor in awarding interest:

> [T]he common law rule requiring that a debtor pay interest on a debt "wrongfully" withheld does not require that the withholding be the result of unreasonable conduct or bad faith in order to justify an award of interest.... The rule, based on the theory that interest represents compensation for the loss of use of money, is restitutionary, rather than punitive in nature ... it rests upon the principle that "a plaintiff wrongfully deprived of a sum of money is not made whole unless the delay in recovery is accounted for." ... Thus, the issue of good faith is irrelevant to a determination of whether a debtor wrongfully withheld payment of a debt so as to require an award of interest....

*Braig*, 682 A.2d at 888, n. 15 (citations omitted). Because of the restitutionary nature of the payment of interest, the fo-

cus is on the loss of the money's value which the rightful owner suffers from the delay in remittance, irrespective of the reason for the delay. Our courts have imposed interest on insurance companies on proceeds that became due, but which the company held onto for some time before paying over. *Schiller v. Royal Maccabees Life Insurance Co.*, 759 A.2d 942, 945 (Pa.Super.2000) (awarding interest because of an insurance company's failure to pay over, by the date due, life insurance proceeds to decedent's estate). In doing so, the Court, as in *Braig*, did not look at the motivation behind the delay:

> Although Appellant may not have done anything 'wrong' by not distributing the proceeds of the insurance policy, the delay deprived appellees of the use of the money during that time. Consequently, appellant had control of money that it concedes it had no right to, and with which it could invest or accrue interest.

*Schiller* at 945. Based on this precedent, we see no error here, where the trial court awarded interest against an "insurer of the public funds," who acknowledges holding onto proceeds past the date they became due.[6]

---

**6.** Although Appellants challenge the imposition of interest, they argue in the alternative that, even if interest is owed, it only runs from the time that judgment is entered. In support of this argument against the award of pre-judgment interest, Appellants cite to several cases. *See, e.g., Younkin v. Nationwide Insurance Company*, 807 A.2d 275 (Pa.Super.2002), *petition for allowance of appeal denied*, 573 Pa. 699, 825 A.2d 1262 (2003). The *Younkin* case, like the others cited by Appellants for their pre-judgment interest argument, is distinguishable. *Younkin* involved an arbitration proceeding arising from a motor vehicle accident in which liability was an open issue, such that the amount of damages (or even whether any damages were owed) was not readily determinable. In contrast to the instant case, in *Younkin*, there was no set obli-

gation, and no readily discernable cash amount owed, so pre-judgment interest was inappropriate. However, *Younkin*, itself, does suggest that in instances such as the instant one, interest would be appropriate. The *Younkin* court references *Schiller*, cited above, and also discusses the Restatement (Second) of Contracts § 354, which provides that

> § 354. Interest As Damages
> (1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.
> (2) In any other case, such interest may be allowed as justice requires on the amount

Second, Appellants contend that the legislature did not intend to authorize the payment of interest because the LTCL does not specifically provide for the payment of interest by a surety, where the taxpayer fails to pay over collected taxes in a timely manner. Appellants note that Section 25 of the LTCL, which defines the responsibilities of the tax collector, delineates penalties for failing to *file* the accounting report on time, but lists no penalties for failing to *pay* collected taxes on time. Appellants contend that this silence regarding penalties for the failure to remit the taxes when due manifests a legislative intent not to authorize penalties for the late payment of taxes.

In evaluating legislation, "we must assume that the General Assembly understands the legal landscape upon which it toils" and "we ... expect the General Assembly to state clearly any intent to redesign that landscape." *Appeal of Rodriguez*, —— Pa. ——, ——, —— A.2d ——, ——, 2003 WL 22208117 (No. 157 MAP 2002, slip op. at 11, filed September 24, 2003). This principle holds true when statutes are constructed over common law foundations—"the legislature must ...

specifically preempt accepted common law for prior law to be disregarded." *Metropolitan Property and Liability Insurance Company v. Insurance Commissioner*, 525 Pa. 306, 310, 580 A.2d 300, 302 (1990).

Guided by these principles, we find nothing within either Section 25, or the LTCL as a whole, that explicitly alters this "common law landscape." Section 25 distinguishes between the reporting responsibility and the payment responsibility, giving each a distinct paragraph. There is no common law basis for imposing a fee for failure to provide the accounting report; therefore, the statutory imposition of the fee is necessary. In contrast, because there *is* a common law obligation to pay interest on late payments, the statute does not need specific language to require interest payments. However, if the legislature intended to preempt this common law basis for the award of interest, it would have needed to do so with explicit statutory language. Because we find no such preemption language within the LTCL, we must presume the framework of Section 25 works in tandem with the existing common law landscape as to this particular issue.[7]

---

that would have been just compensation had it been paid when performance was due.

Although the instant obligation arises from a statute, and not a contract, the rule is sufficiently analogous to be persuasive in this case and consistent with our analysis in *Braig* and *Schiller*. Because both of these cases impose interest from the date that a payment of a sum certain was due, we reject Appellants pre-judgment interest argument.

7. Appellants cite to several prior statutory provisions that, they argue, authorized the payment of interest, and that were not carried over into present law when the statutes were recodified. *See, e.g.,* Act of 30 March 1811, P.L. 145, and Act of 21 April 1846, P.L. 413. As these sections do not specifically address the collection of municipal taxes by local tax authorities, but instead address the regulation of Commonwealth fiscal affairs by the Com-

monwealth's Auditor General, we find this argument inapposite to the case before us.

Appellants also cite to other penalty provisions within the LTCL, specifically providing for imprisonment or a fine for embezzlement (Section 39, 72 P.S. § 5511.39), for failure to be available to receive taxes at least 3 days a week (Section 13, 72 P.S. § 5511.13) or for failing to furnish tax receipts (Section 14, 72 P.S. § 5511.14). We disagree that these provision are helpful to their position. As noted in *Braig*, the imposition of interest "is restitutionary, rather than punitive in nature...." Although specific, criminal punitive measures were provided for within the statutory framework, it does not preclude common law restitutionary measures. Appellant's arguments, as to the silence of the statute regarding penalties for late payment by the tax collector, may support precluding criminal sanctions for such action; however, that is not the issue

■ Appellants, relying on Section 4(d) of the LTCL, 72 P.S. § 5511.4(d),[8] also argue that any interest payments owed were discharged at the time the District gave Kerins the duplicates[9] for the subsequent year. In response, the District argues, persuasively in our view, that it was required to provide the duplicates to Kerins and that this does not relieve him from paying interest. Although Section 4(d) provides several instances in which "[t]he tax collector ... and his sureties shall be discharged from further liability on his bond for the taxes charged in a duplicate," it also specifically provides that "the tax collector and his sureties *shall not* be discharged of their liability under the provisions of this subsection if the tax collector has in fact collected such taxes but has failed to pay the same over to the proper taxing district." (Emphasis added.) Since Kerins was the tax collector for the Township, and was appointed by the District itself, the District lacked authority to withhold from him the duplicates for 2000, even though the previous years' duplicates had not been settled. *Bogdan v.*

*School District of Coal Township,* 369 Pa. 147, 85 A.2d 139 (1952) (concluding that because the tax collector for township did not derive his authority from the school board, the board was without authority to deny duplicates even though issues remained from the previous duplicates). Accordingly, the issuance of duplicates for the next year did not relieve Kerins of liability.

For these reasons, we find no error with the trial court's decision that interest was recoverable.

## Can Fidelity be Held Responsible for the Interest?

■ Fidelity argues that its liability is limited to situations in which there has been wrongdoing by the collector, such as absconding with funds, and that, even in those cases, it is responsible only for the amounts collected as charged in the tax duplicate. The District disagrees that wrongdoing is a predicate, and notes that "the purpose of obtaining a surety bond is to ensure, and provide a financial guaran-

here. Therefore, we reject Appellants arguments as to the enumerated criminal sanctions within the LTCL.

8. 72 P.S. 5511.4(d) provides that:
The tax collector of boroughs, towns and townships of the second class and his sureties shall be discharged from further liability on his bond for the taxes charged in a duplicate delivered to him as soon as all tax items contained in the said duplicate are either—(1) collected and paid over to the proper taxing district; or (2) certified to the taxing authority for entry as liens in the office of the prothonotary; or (3) returned to the county commissioners for sale of the real estate by the county treasurer; or (4) in the case of occupation, poll and per capita and personal property taxes accounted for by the payment over, or by exoneration, which shall be granted by the taxing district upon oath or affirmation by the tax collector that he has complied with section twenty of this act: Provided, however, That the

tax collector and his sureties shall not be discharged of their liability under the provisions of this subsection if the tax collector has in fact collected such taxes but has failed to pay the same over to the proper taxing district.

9. Section 2 of the LTCL, 72 P.S. § 5511.2, defines "duplicate" as:

**"Duplicate"** shall mean a listing of the valuations of persons and property within a taxing district taxable for the applicable year and may include a computerized billing register of annual taxes. It shall be prepared or derived from the county assessment roll and, after being certified as accurate by the taxing district, shall be used by the tax collector to notify the persons whose names appear thereon of the valuations and identification of the properties or persons taxed, the rates of taxes and the amount of tax due....
*Id.*

ty, for the faithful performance of the public official's duties." (District's Brief at 8). The trial court adopted the District's position, and we find no error in its reasoning.

█ The trial court correctly noted that Section 684 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 6–684(a) (Public School Code), specifically states that the bond for school tax collector is "conditioned upon the faithful performance of his duties as such tax collector." Requiring a surety bond helps to ensure that the tax collector fulfills the legal and financial obligations imposed upon him and that, if he fails to do so, the school district will still be in the same position it would have been in had the tax collector performed. This is because, if the tax collector fails to perform his duties, the surety stands in the same position as the tax collector and is subject to the same liabilities. *See County of Somerset v. George,* 138 Pa.Cmwlth. 87, 587 A.2d 360, 366 (1991)(noting that the only defenses available to the surety of a tax collector "were those which the tax collector himself could raise."), *petition for allowance of appeal denied,* 528 Pa. 632, 598 A.2d 285 (1991); *see generally Witherow,* 337 Pa. at 490, 12 A.2d at 93 (noting that the tax collector stands in a fiduciary capacity to the taxing authority, acting as "an insurer of the public funds entrusted to his care and may not relieve himself or his surety from this obligation by showing an absence of negligence on his own

part. . . ."). In this manner, the municipality is restored to the same position it would have been had the tax collector fulfilled his obligations.

In the instant case, Kerins did not fulfill his statutory obligations. He maintained possession of funds after he was required to pay them and, by doing so, breached his fiduciary responsibility as to the proceeds. Under these circumstances, there is no reason why Fidelity, having assured the District of the tax collector's faithful performance of his duties by issuing a bond on his behalf, should not be financially accountable for the collector's breach of these duties. That the funds may have, at some point, been paid over, does not alleviate the time-value lost by the delay. Accordingly, we find no error in the trial court's ruling that Fidelity could be held accountable for interest on the collected taxes.[10]

█ Appellants argue that the LTCL limits the amount payable on the bonds to the amounts set forth in the duplicates provided to the tax collector. The argument stems from subparagraph (b) of Section 4 of the LTCL, which provides that the tax collector "shall enter into one surety bond to the Commonwealth for all taxes to be collected by him, in an amount to be fixed by the court of common pleas of the county, which amount shall never exceed the estimated amount of taxes charged in the duplicates to be delivered to him in one

---

**10.** Appellants also maintain that the surety should not be responsible for the District's inaction during the seven month period subsequent to when the first missed payment should have been made. Appellants argue that an agent should not be liable for actions under the control of the principal, citing to *Commonwealth v. Philadelphia County,* 157 Pa. 531, 27 A. 546 (1893); *Commonwealth v. Philadelphia City and County,* 157 Pa. 558, 27 A. 553 (1893). We find these cases inapposite to the matter before us. Neither of these cases was decided under the LTCL and neither involved the collection of local taxes by a local agency, but rather the county's collection of state taxes for the Commonwealth. The cases, thus, involved issues of agency law that are not relevant for this proceeding, specifically, the extent that a county, under the then existing tax collection law, could be liable for the actions of its agent tax collector in his duties of collecting state taxes that the county was statutorily obligated to pay to the Commonwealth.

year." Although this Section limits the bond to the duplicate amount, the District correctly notes that this provision must also be read in conjunction with subparagraph (c) of the same Section, which provides that "the condition of the bond shall be that the collector as tax collector for the borough, town or township, as the case may be, and for the county, the county institution district, school district and vocational school district shall account for and pay over *all taxes, penalties and interest received* and collected by him to the taxing districts entitled thereto." (Emphasis added.) As we read the language of Section 4(c), the amounts payable by the bond may be in excess of the amount provided for in the duplicate; however, these amounts must directly arise from the tax set forth in duplicate. The "penalties and interest received" referenced in that Section clearly relate back to the underlying tax obligation owed. In the instant case, the amounts owed arise from the underlying tax obligation set forth in the duplicate. Given the purpose behind bonds and sureties to ensure the timely performance of the collector's duties, we find no error in the trial court's holding that Fidelity was responsible, along with Kerins, for the interest.

## Was the Documentary Evidence Sufficient?

Appellants argue that the documentary evidence submitted was not sufficient because (1) the Certificate of Liability was invalid and (2) the Profile of Taxes was invalid.

First, with regard to the Certificate, Appellants contend that it was invalid because (1) it had to be signed by the School Board, and not merely by the Superintendent, and (2) the document was not properly served, because Appellants did not receive notice of the judgment by certified mail as required by Section 41 of the LTCL.[11]

■ Section 41 requires "a certificate under the hands and seals of the corporate authorities." In the instant case, the certificate had been signed by the Superintendent, with a seal affixed to it that bore the phrase "School District Seal." Appellants assert, however, that Section 507 of the Public School Code, 24 P.S. § 5–507, grants corporate powers to the board of directors, not the Superintendent, and that the Superintendent lacks authority on his own to initiate proceedings such as this.[12]

---

11. This Section provides that:
 In all cases where, in any settlement of the accounts of any tax collector, the taxing district or the auditing authority thereof, shall subject a tax collector to any liability, a certificate under the hands and seals of the corporate authorities, shall be filed in the office of the prothonotary of the court of common pleas of the county, stating the amount due and unpaid by such tax collector. Notice thereof shall be given by the taxing district, by registered mail, to such *tax collector and his sureties.*
 72 P.S. § 5511.41.

12. This Section provides that:
 In order to establish, enlarge, equip, furnish, operate, and maintain any schools or departments herein provided, or to pay any school indebtedness which any school dis-

trict is required to pay, or to pay any indebtedness that may at any time hereafter be created by any school district, or to enable it to carry out any provisions of this act, the board of school directors in each school district is hereby vested with all the necessary authority and power annually to levy and collect, in the manner herein provided, the necessary taxes required, in addition to the annual State appropriation, and shall have, and be vested with, all necessary power and authority to comply with and carry out any or all of the provisions of this act. In the case of a school district of the first class, the duties imposed by this section shall apply to a city of the first class that is coterminous with a school district of the first class.

The statute provides no direct authority for the Superintendent to pursue, unilaterally, the collection of tax monies. Nonetheless, the Superintendent maintains a "unique status as a non-voting board member as well as being the chief executive officer of the District." *Burns v. Board of Directors of Uniontown Area School District*, 748 A.2d 1263, 1266 (Pa.Cmwlth. 2000). In the instant case, the Superintendent was not formulating new tax levels or developing new policy, but was simply seeking to retrieve tax monies that had been properly collected on behalf of the District. Because this course of action is consistent with the exercise of executive functions springing from the School Board's taxing powers, as defined in Section 5-507 of the Public School Code, the Superintendent's filing of the Certificate of Liability was not an inappropriate exercise of authority. Additionally, the attachment of the seal of the School Board creates a further indication of regularity. *Graybill v. Juniata County School District*, 21 Pa. Cmwlth. 630, 347 A.2d 524, 526 (1975) (concluding that the presence of the word "seal" affixed adjacent to the signature "[c]learly, unless adequately rebutted … provides ample evidence that the [documents] were executed under seal.")

 As to the improper notice argument, although Section 41 of the LTCL requires notice by certified mail, failure to provide such notice is not fatal if the party being served has actual notice. *First Eastern Bank, N.A. v. Campstead, Inc.*, 432 Pa.Super. 241, 637 A.2d 1364, 1366 (1994) (finding that actual notice is sufficient to cure the failure to provide notice by certified mail, as "to require strict compliance [with notice requirements is] in fact … to exult form over substance, and ignore the purposes of the [notice] requirement."). Appellants acknowledge having actual notice of the proceeding, and do not argue that they lacked an opportunity to be fully heard on the issue as a result of improper notice. As such, under *First Eastern Bank*, we hold that any improper method of service was harmless.

Appellants also challenge the validity of the information contained within the Profile submitted in support of the Certificate of Liability for two reasons. First, they argue that the specific amounts set out in the Profile are incorrect. Second, Appellants claim that the source for this information is not the best evidence.

 Regarding the contention that the District did not calculate the interest amounts in the Profile correctly, Appellants make three arguments. First, they contend that the District has, twice, had to amend its Certificate of Liability to reduce the amount Kerins owes because of errors and there are still errors that need correction. Specifically, Appellant argues that for eight (8) specific deposits, interest was calculated a month earlier than it should have been. The District acknowledges that corrections have been made to the Certificate of Liability; however, it maintains that all errors have been addressed and that it has specifically addressed each of the purported errors in the eight deposits. Having reviewed the record in light of these arguments, we agree with the trial court that the District recognized that some errors had been made, and made appropriate corrections.

 Second, Appellants argue, for purposes of determining the month that specific amounts collected were owed, the monies should have been considered collected at the time the payor's check cleared, and not the time the check was received by Kerins. In response, the District correctly notes that the statutory language indicates that the tax collector is required to turn over on the tenth of each month, monies **collected**, not monies collected whose

checks have cleared. Thus, the obligation on the tax collector is not conditioned upon his deposit of the checks, but upon his receipt of them. Additionally, as noted by the trial court, the District's method of calculation was actually favorable to Appellants because Kerins testified that he did not regularly input his collection data, doing so periodically *en masse*. Thus, by Kerins' own admission, significant periods of time may have passed from the time the checks were received until his records actually reflected that they were received. Accordingly, we reject Appellants' position.

■ Finally, regarding the calculations, Appellants argue that the District used interest rates that were higher than the rates the District actually received on other funds. They maintain that the District failed to produce evidence to support these higher rates. We, however, see little need to address which of these rates was appropriate, because the District was entitled to receive interest at the even higher rate of "six percent per annum" as provided by Section 202 of the Act of January 30, 1974 (Act), P.L. 13, *as amended*, 41 P.S. § 202. In *Braig*, we "award[ed] ... interest at the *legal rate* from the date the money was due and payable." *Id.* at 886 (citations omitted) (emphasis added). *Cf. In re Traffic Safety Company*, 21 B.R. 669 (Bankr.E.D.Pa.1982) (finding surety of trustee's bankrupt estate liable at legal rate of interest, and not at the rate that estate would have been able to earn had it been able to invest the money at issue); *Pennsylvania Company for Insurance on Lives v. Philadelphia, Germantown and Norristown Railroad*, 153 Pa. 160, 25 A. 1043 (1893), *affirming on the basis of the trial court opinion* at 1 Pa. D. 301 (Philadelphia County Court of Common Pleas (1892)) (awarding legal rate of interest on stock proceeds that had not been turned over on the date due, "leaving out of the calculation all fluctuations in value and all dividends or other adventitious increment which may have been derived by other persons in possession of the stock, and substituting for them interest on the value."). In the instant case, the District requested and was granted interest *below* the legal rate. Since the District did not request the legal rate of interest, we will not, *sua sponte*, award it here. However, we also see no need to address Appellants' argument that the rate the District received was too high, since the rate it did receive was less than what it is entitled to. Accordingly, we reject this argument.

■ Appellants also argue that the District gave no valid reason for not using the Final Report prepared by Kerins to prepare the Profile. However, we agree with the District that for Appellants to question this "lack of best evidence" is disingenuous because the data used within the Profile was taken from computer printouts *supplied by Kerins*. Kerins has not questioned the validity of the data within these computer printouts. Thus, since the District relied upon data supplied by *Kerins, himself*, and, since Kerins does not contest its accuracy, we find no error in the District's reliance on this data in preparing its Profile.

For these reasons, we affirm the trial court's order.

### ORDER

**NOW,** December 5, 2003, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.