STATE OF MAINE                    SUPERIOR COURT
CUMBERLAND, ss.                   CIVIL ACTION
                                  DOCKET NO: CV-10-62
                                  JAN - CUM - 4/3/2012

INDIANA FAITHFULL

            Plaintiff,

    v.                            STATE OF MAINE Office
                                  Cumberland ss. Clerk's Office

                                  APR 03 2012

                                  RECEIVED

MAINE PRINCIPALS' ASSOCIATION

            Defendant,

and

CHEVERUS HIGH SCHOOL

            Party-In-Interest

## DECISION AND ORDER ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

This case is before the court on the defendant, Maine Principals'

Association's Motion for Summary Judgment on the plaintiff's two-count

amended complaint. The motion has been fully briefed by the parties and the

motion is ruled on without hearing pursuant to M.R. Civ. P. 7(b)(7).

### BACKGROUND

The Maine Principals' Association ("MPA") is a private, non-profit

voluntary educational organization. (Def. Stat. Material Facts "DSMF" ¶ 1.) It

maintains an Interscholastic Division that organizes and regulates the

interscholastic athletic competition of its member schools, including Cheverus

High School. (DSMF ¶¶ 2-3.) The MPA has developed By-Laws that define

student eligibility for interscholastic athletic competition and the various

processes for assuring compliance.

1

Article II, Section 11 of the By-Laws states that "a student is ineligible to participate in more than four seasons in the same sport at the high school level." (DSMF ¶ 55.) "High school level" means varsity, junior varsity, club, and freshman athletic teams. (DSMF ¶ 56.) A student participates in a season if "a team of which he/she is a member participates in a regularly scheduled athletic event." (DSMF ¶ 57.) As described in Article III of the By-Laws, the basketball "season" runs from December to February. The purposes of the "Four Seasons Rule" include promoting equality in competition, diminishing risk of injury from unequal competition, placing proper emphasis on academics, increasing opportunities for more students to participate in interscholastic athletics, and preventing "redshirting." (DSMF ¶ 58.) For similar reasons, Article II, section 2(G)(1) limits a student's eligibility to play any high school sport to the first eight consecutive semesters after he or she first enrolls as a freshman in a four-year senior high school (the "Eight Consecutive Semesters Rule"). (DSMF ¶ 23.)

Pursuant to the MPA By-Laws, any athletic contest in which the ineligible player participated will be declared a loss for the school playing the ineligible player (the "Forfeiture Rule"). (DSMF ¶ 60.) Any challenge to eligibility by another school is referred to the Management Committee. (DSMF ¶ 61.) Unless the allegedly offending school and the MPA resolve the matter by agreement, the Management Committee holds an "adversary hearing" to determine if a violation of the By-Laws has occurred. (DSMF ¶ 62.) In practice, it is not always a challenge by another school that raises an issue of eligibility. Schools are required to evaluate the eligibility of their own players and can raise an issue through that process. And, the MPA can begin the process if it independently discovers a violation.

2

Indiana Faithfull ("Faithfull" or "Plaintiff") is a dual citizen of the United States and Australia. (DSMF ¶ 4.) Faithfull attended schools in Australia from kindergarten until July 2007, part way through his tenth year of school (equivalent to tenth grade in the United States). (DSMF ¶¶ 7, 15.) In July 2007, Faithfull was accepted to attend Cheverus High School in Portland, Maine. (DSMF ¶ 15.) Faithfull entered Cheverus in September 2007 to begin his sophomore year. (DSMF ¶ 16.)

The academic calendar for Australian schools begins in late January and ends in early December. (DSMF ¶ 6.) Because of this structural difference in calendars, a student who transfers after starting his or her first year of high school at an Australian school will be barred from athletics under the Eight Consecutive Semester Rule before second semester senior year. Also, although Australia operates on a different academic calendar, basketball is played during the same months as in the northern hemisphere: roughly from November through March. (DSMF ¶ 8.[1]) Because the athletic season for basketball spans two academic years, under the MPA By-Laws definitions, a student who transfers from an Australian school after playing a winter sport in the first year of high school will exhaust his or her Four Seasons of eligibility by the end of junior year.

In late January 2010, both Gary Hoyt, Cheverus's athletic director, and John Mullen, Cheverus's principal, approached Richard Durost, executive director of the MPA, to discuss Faithfull's eligibility under the Eight Consecutive Semesters Rule. (DSMF ¶ 26.) The Cheverus officials acknowledged that

---

[1] The Plaintiff appears to object to the use of the term "season" but the Plaintiff's supporting citations confirm that basketball is played during the months of November through March. (Pl. Resp. Stat. Mat. Facts ¶ 8.)

Faithfull was ineligible under this rule but sought relief either through a waiver or exception. (DSMF ¶¶ 28-35.) Durost explained that the time frame for seeking a waiver had long passed and that an exception would not be made. (*Id.*) Without proceeding to a formal "adversary hearing," Cheverus agreed not to play Faithfull and the MPA made a statement for Cheverus to use in its press release praising the school's swift investigation and agreeable compliance. (DSMF ¶ 35.)

On February 9, 2010, Faithfull filed his Complaint in this case. He alleged that the MPA's "Eight Consecutive Semester Rule" of athletic eligibility violated the Maine Human Rights Act, 5 M.R.S. §§ 4551-4634 (2011), by denying an educational opportunity on the basis of national origin. Faithfull sought a finding that the rule was discriminatory and sought injunctive relief confirming his eligibility to play basketball in the spring semester of the 2009-2010 basketball season. He also sought a temporary restraining order ("TRO") allowing him to continue to participate in the basketball season while this issue was litigated in the courts. This court granted the TRO on February 12, 2010 preventing the MPA from enforcing the Eight Consecutive Semester Rule against Faithfull.

After the issuance of the TRO, Mr. Durost had conversations with principal Mullen and athletic director Hoyt about the scope of the TRO. Durost communicated that he did not believe that the TRO required Cheverus to actually play Faithfull in the remaining games. (DSMF ¶ 39.) Durost also explained the MPA "Restitution Rule," which states that if a school plays an ineligible player pursuant to an injunction that is later reversed or vacated, the school must still forfeit the game in which the ineligible player participated. (DSMF ¶ 42.) The Restitution Rule is inapplicable if the player does not actually

4

play during an athletic event. (DSMF ¶ 43.) The Plaintiff also alleges that Durost threatened to investigate Cheverus for the possibility that it "recruited" Faithfull and that Durost continued to pressure Cheverus into not playing Faithfull throughout the remainder of the season. (PASMF ¶¶ 109-110.[2])

Faithfull competed in the remainder of the 2009-2010 season and Cheverus won the state championship. (DSMF ¶ 44.) In preparation for further litigation on Faithfull's Complaint, the MPA deposed Faithfull in June 2010. During this deposition, the MPA learned that, beginning in January of his ninth grade year, Faithfull played competitive interscholastic basketball for Cranbrook, his school in Australia. (DSMF ¶ 9.[3]) At the end of his ninth grade year, Faithfull again played competitive interscholastic basketball for Cranbrook during the months of November and December. (DSMF ¶¶ 10, 51.) Therefore, Durost concluded that Faithfull played basketball for Cranbrook in two "seasons" during his ninth grade year. (Pl. Additional Stat. Mat. Facts "PASMF" ¶ 99; DSMF ¶ 54.[4]) Given that Faithfull continued to play basketball after transferring to Cheverus during his sophomore and junior year, Durost concluded that Faithfull should have been considered ineligible for the entire 2009-2010 season, under the Four Season Rule. (DSMF ¶ 54.)

Shortly after the deposition, Mr. Durost met with John Mullen and legal counsel to discuss the apparent violation of the Four Seasons Rule and to attempt

---

[2] The Defendant attempts to deny these facts with a citation to Durost's deposition. (Def. Reply to Pl. Additional Stat. Mat. Facts ¶¶ 109-110.) However, the pages of the deposition cited are not included in the record and the court cannot determine if this is an effective denial. Therefore, the statements are deemed admitted for purposes of summary judgment.

[3] The Plaintiff attempts to qualify the term "competitive interscholastic basketball" but the record citation does not establish any distinction. (Pl. Resp. Stat. Mat. Facts ¶¶ 9,10.)

[4] Plaintiff attempts to deny this fact by objecting to the definition of the term "season." Regardless of how the Plaintiff defines the term, the denial is ineffective as to the MPA's conclusion regarding Faithfull's status under the MPA's own definition. (Pl. Resp. Stat. Mat. Facts ¶ 54.)

5

to come to agreement to resolve it. (DSMF ¶ 59.) Durost told Principal Mullen that Cheverus's forfeit of the 2009-2010 state basketball championship and implementation of procedures to ensure timely detection of eligibility issues in the future would be a satisfactory agreement to resolve the alleged violation. (DSMF ¶ 66.) Cheverus, apparently concerned that any agreement to forfeit the championship will violate the TRO, has not agreed to the MPA's proposal and has sought clarification of the TRO, which this court has declined to give. (DSMF ¶¶ 70, 74.) The MPA has not taken any further action with respect to determining Faithfull's eligibility under the Four Seasons Rule. (DSMF ¶ 81.)

On June 29, 2010, Faithfull filed a charge with the Maine Human Rights Commission alleging that the application of the Four Seasons Rule to him is discriminatory on the basis of national origin and that the MPA's seeking forfeiture of the state championship under this rule constituted retaliation for filing suit under the Eight Consecutive Semesters Rule. (DSMF ¶ 72.) Ultimately, the Commission did not find reasonable grounds to uphold a charge of discrimination. (DSMF ¶ 78.) After receiving the Commission's decision, Faithfull amended his complaint in this action, abandoning his claim of discrimination under the Eight Consecutive Semesters Rule and adding a claim alleging that the application of the Four Seasons Rule to him constituted discrimination based on national origin and alleging that application of the rule was retaliatory. (DSMF ¶¶ 79-80.) The MPA now brings this motion for summary judgment on both counts of Faithfull's Amended Complaint.

## DISCUSSION

The MPA has moved for summary judgment on the Plaintiff's Amended Complaint and seeks judgment in its favor on the grounds that the Plaintiff's

6

claim of discrimination at the hands of the Four Season Rule is not ripe, that the Plaintiff lacks standing to assert it, that there is no evidence of disparate impact and the rule is necessary for educational purposes, and that the claim of retaliation is not supported by the evidence.

## I.	Summary Judgment Standard.

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. Rule 56(h) requires a party that is opposing a motion for summary judgment to support any qualifications or denials of the moving party's statement of material facts with record citations. *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6 n.5, 770 A.2d 653. "All facts not properly controverted in accordance with this rule are deemed admitted." *Rogers v. Jackson*, 2002 ME 140 ¶ 7, 840 A.2d 379 (*citing* M.R. Civ. P. 56(h)(4)).

## II.	Discrimination under the Maine Human Rights Act, 5 M.R.S. §§ 4601, 4602.

The Defendant is correct to state that this is a different case than was presented to the court in February 2010. The parties have abandoned the issue of the Eight Consecutive Semester Rule and are proceeding solely under the Four Seasons Rule. As this is an entirely new claim, questions of justicibility are appropriate.

A court's analysis of ripeness examines both the issue's fitness for judicial review and consideration of the hardship that may be caused to the parties if the

7

court withholds adjudication. *Johnson v. City of Augusta*, 2006 ME 92, ¶ 8, 902 A.2d 855. "The legal dispute has to be concrete and specific with a direct, immediate and continuing impact on the affected party." *Id.* (internal quotations removed). The hardship must also be adverse and non-speculative. *Id.*

The MPA argues that Faithfull's claim of discrimination on the basis of the Four Seasons Rule is not ripe because the MPA has not yet made a determination of ineligibility. That is, although the MPA attempted to negotiate a resolution with Cheverus, based on the executive director's belief that Faithfull was ineligible, there has not been any adversary hearing resulting in a <u>finding</u> that Faithfull was ineligible because of the Four Season Rule. Furthermore, there have been no consequences to Faithfull because of this attempted negotiated resolution. The court cannot speculate on whether or not Cheverus will agree to forfeit the state championship title[5] and, if Cheverus does not, the court cannot speculate on the outcome of the MPA Management Committee's adversary hearing process. There is not yet any direct, immediate, or continuing impact on Faithfull. Furthermore, Faithfull has not demonstrated any hardship that would result from not adjudicating this issue now.

Faithfull argues that the MPA's position contradicts its prior assertion that Faithfull was ineligible under the Eight Consecutive Semester Rule because that determination was made without an adversary hearing. However, the current situation is different than it was in when this case was brought in February 2010. Then, the school approached the MPA with its assessment of Faithfull's eligibility and voluntarily entered an agreement with the MPA that Faithfull had

---

[5] Cheverus's statement that it will "do the right thing" is insufficient evidence to support the conclusion that Cheverus will forfeit the state championship title when the TRO is lifted. (DSMF ¶ 68.)

8

exceeded eight semesters of eligibility and should be excluded from competition. And, Faithfull was actually excluded until this court issued the TRO. Here, now, there has been no agreement between the school and the MPA as to eligibility under the Four Seasons Rule and there has not been any consequence to Faithfull, his teammates, or the school. The position of the MPA that this case is not ripe is not contrary to the position it took prior to the Amended Complaint.

III.    Retaliation Claim under 5 M.R.S. § 4633.

The Maine Human Rights Act authorizes an independent action arising from any retaliation or improper coercion, intimidation, or threats made against an individual for exercising the rights granted to them under the Act. 5 M.R.S. § 4633. To make a prima facie case of retaliation, the plaintiff must prove that he engaged in protected activities, that the defendant took subsequent adverse actions against the plaintiff, and that there was a causal link between the protected activity and the adverse actions. *See Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 33, 969 A.2d 897; *see also Blake v. State*, 2004 Me. Super. LEXIS 90, * 10 (Mar. 22, 2004), *aff'd* 2005 ME 32, 868 A.2d 234 (stating that, in an employment context, to be considered "adverse action" the conduct must affect the employee's compensation, terms or other conditions of employment and that actions such as required counseling or transfer of clients is not adverse action). When an adverse action takes place in "close proximity" to the protected activity, the burden of proof shifts to the defendant to show a non-discriminatory reason for the adverse action. *Watt*, 2009 ME 47 at ¶ 33.

Faithfull alleges that the MPA made "repeated direct and indirect threats," such as Durost contacting Cheverus after the issuance of the TRO and requesting that it not play Faithfull, Durost stating to Cheverus that if Faithfull

9

played it would investigate alleged recruitment, Durost stating that if Faithfull did not play then the MPA's restitution rule would not apply, Durost requesting that Cheverus voluntarily forfeit the state title, and the MPA seeking to declare Faithfull ineligible for the entire 2009-2010 season under the Four Seasons Rule. (Am. Compl. ¶¶ 19-23, 45; PASMF ¶¶ 109-110.)

The MPA does not dispute that Durost had conversations with Cheverus officials regarding the scope of the TRO, that he maintained that the TRO did not require that Faithfull actually play, nor the fact that Durost explained the consequences of the Restitution Rule. The MPA has failed to properly deny the allegations of threats to investigate "recruiting" of Faithfull if Cheverus continued to play him. However, even without dispute as to these facts, the Plaintiff has failed to meet his burden of proof because none of these facts assert that the MPA's actions constitute adverse consequences for Faithfull and he has failed to establish the causal connection between his filing this lawsuit and the MPA making these statements and taking these positions.

As discussed above, the Four Seasons Rule has not yet been applied to find that Faithfull was ineligible and Cheverus has not reached any agreement with the MPA to concede to such a finding. Whatever actions Durost took, there have not been any adverse consequence to Faithfull of the kind contemplated by the case law: he was allowed to play in all of the games occurring after the TRO became effective, he and his team won the state title, he received individual awards for his performance, and he graduated from high school and has continued to play basketball.

Also, the MPA's actions were not incongruous with its right to vigorously enforce its rules and participate in litigation to enforce those rules. Other than

10

asserting the applicability of the Four Season Rule, the actions that Faithfull objects to are consistent with the position that the MPA took regarding Faithfull's eligibility under the Eight Consecutive Semester Rule before this case was filed. The Maine Human Rights Act's prohibition of retaliation does not prevent a party from continuing to assert and litigate its legal position. The MPA's attempted application of the Four Seasons Rule to Faithfull is also a continued assertion of the MPA's position that Faithfull was ineligible. Additionally, the MPA attempted application of the Four Seasons Rule occurred several months after Faithfull filed his Complaint and not in close enough "proximity" to cause the shift of burden to the MPA to demonstrate a non-discriminatory reason for applying the rule. Therefore, the burden remains on Faithfull to establish a causal connection between filing this lawsuit and the MPA's attempted application of the Four Seasons Rule and that burden has not been met.

**The entry is:**

The Maine Principals' Association's Motion for Summary Judgment on the Plaintiff's Amended Complaint is GRANTED. The Amended Complaint is dismissed without prejudice. The Temporary Restraining Order, entered by this court on February 12, 2010 is VACATED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: April 2, 2012

Joyce A. Wheeler
Justice, Superior Court

Plaintiff-Richard O'Meara Esq
        -Paul Greene Esq
Defendant MPA-Margaret LePage Esq
PII Cheverus-Melissa Hewey Esq

11